*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 20**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SAMUEL R. MCLAUGHLIN and JOHN DOES 1-10,
*Plaintiffs and Appellant,*

*v.*

GREG SCHENK; Estate of BOYD SCHENK; ANNA SCHENK;
COOKIETREE, INC.; JOHN DOES 1-10,
*Defendants and Appellees.*

No. 20111109
Filed April 5, 2013

Third District, Salt Lake
The Honorable Anthony B. Quinn
No. 040924997

Attorneys:

Lincoln W. Hobbs, Margaret H. Olson, Salt Lake City,
for appellant

Matthew M. Durham, Justin B. Palmer, Salt Lake City, for
appellees Cookietree, Inc. and Greg Schenk

Richard D. Flint, Salt Lake City, for appellees Anna Schenk and
Estate of Boyd Schenk

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1     This case involves an appeal from an entry of summary judgment in a case that we remanded in 2009.  In 1999, Greg Schenk purchased shares in Cookietree, Inc. (Cookietree), in violation of a 1991 Shareholder Agreement.   In 2005, Cookietree's Board of Directors (Board), including Schenk, voted to waive the provisions of the 1991 Shareholder Agreement that precluded the stock purchase.  Around that same time, shareholders representing nearly 90 percent of Cookietree's shares, again including Schenk, signed consent and waiver forms ratifying the 1991 stock purchase (collectively, the 2005 Waivers).  Samuel McLaughlin, a minority share-

holder, brought suit challenging the stock purchase, and the district court granted Cookietree and Schenk's motion for summary judgment. On appeal, we held that the 2005 Waivers were tainted by Schenk's participation in the votes and remanded for a determination of whether the 2005 Waivers were fair. *McLaughlin v. Schenk*, 2009 UT 64, 220 P.3d 146 (*McLaughlin I*).

¶2 Following our remand, Cookietree took several corporate actions that it intended to have "the same purpose and effect of a fairness hearing: to resolve the nontransaction conflict of interest that tainted the 2005 Waivers" (2009 Ratifications). Specifically, in 2009, the Board voted to waive the stock transfer provisions in the 1991 Shareholder Agreement and to ratify the 2005 Waivers. And in 2010, the shareholders similarly voted to waive the stock transfer provisions and to ratify the 2005 Waivers.

¶3 The district court thereafter held that McLaughlin was still entitled to a fairness hearing, notwithstanding Cookietree's attempts to resolve the conflict of interest. But when the case was reassigned to another district court judge, the replacement judge disagreed with the determination that a fairness hearing was necessary. He ruled that the post-remand corporate actions resolved any issue concerning the conflict of interest that had tainted the 2005 Waivers and entered summary judgment in favor of Cookietree and Schenk. McLaughlin appeals to this court, raising several issues for our consideration.

¶4 The first issue is whether the district court violated the law of the case doctrine when it ruled that it could consider options other than a fairness hearing to resolve the nontransaction conflict of interest situation. The second issue is whether the holding of *McLaughlin I* that shareholders in closely held corporations owe each other fiduciary duties has been superseded by statute and whether the statute is dispositive in this case. The third issue is whether the district court violated our mandate in *McLaughlin I* by declining to hold a fairness hearing. The final issue is whether the post-remand corporate action mooted the need for a fairness hearing, thereby mandating summary judgment in favor of Schenk and Cookietree.

## BACKGROUND

¶5 Cookietree is a Utah corporation that was established in 1981. *McLaughlin v. Schenk*, 2009 UT 64, ¶ 3, 220 P.3d 146. Schenk is the majority shareholder and President of the Board. *Id.* ¶¶ 3, 6. McLaughlin is a minority shareholder and former executive employee. *Id.* ¶¶ 3, 9.

¶6     In 1999, the Estate of Boyd Schenk sold 545,200 shares of Cookietree common stock to Greg Schenk. "This transfer was not recorded in Cookietree's minutes or written records, and a right of first refusal was not provided to the corporation or the other shareholders," in violation of the 1991 Shareholder Agreement. *Id.*

¶7     In 2004, McLaughlin filed suit against Schenk and Cookietree, alleging that the stock transfer violated the 1991 Shareholder Agreement. In 2005, Cookietree's Board and shareholders, including Schenk, who acted in both capacities, passed the 2005 Waivers, which purported to waive the provisions of the 1991 Shareholder Agreement that precluded the stock transfer. Cookietree and Schenk then successfully moved to dispose of McLaughlin's claims on summary judgment. *Id.*

¶8     McLaughlin appealed to this court. *Id.* Although we held that the 2005 Waivers did not violate Cookietree's corporate governance documents, we held that the 2005 Waivers "suffer[ed] from . . . [a] lack of probity and fair dealing." *Id.*, ¶ 36. We reasoned that shareholders in closely held corporations owed fiduciary duties to other shareholders and extended the conflict of interest provisions of section 851 of the Utah Revised Business Corporation Act (Corporation Act), UTAH CODE §§ 16-10a-101 et seq., to "nontransaction related conflicts" of interest such as those at issue in this case. *Id.* ¶ 37. After concluding that Schenk's participation in both the Board waiver and the shareholder waiver was tainted by a conflict of interest, we reversed the summary judgment that had been based on these waivers. "We therefore remand[ed] for a determination of whether the [2005] [W]aivers were fair within the meaning of Utah Code section 16-10a-851, which is a fact-intensive inquiry focusing on whether the waivers were beneficial to the corporation and the shareholders and whether they satisfied the standard of fair dealing." *Id.* ¶ 38.

¶9     Following our remand, on December 18, 2009, all three of Cookietree's Board members met. They included Schenk, Harold Rosemann, and David Rudd. Schenk and Rosemann disqualified themselves from voting due to a conflict of interest. The one remaining Board member, Rudd, voted to ratify the 2005 Waivers and "presently waived the stock transfer provisions in the Shareholders Agreement." All three Board members then voted to ratify the actions of Rudd.

¶10     Rudd then authorized two proposals to be submitted to the shareholders for vote at the upcoming annual meeting on

January 6, 2010. Proposal One was a present waiver of the stock transfer provisions. Proposal Two was ratification of the 2005 Waivers and Proposal One.

¶11    The 1991 Shareholder Agreement required that two-thirds of the shares, excluding those shares owned by the controlling shareholder, vote to waive the Shareholder's Agreement's restriction on share transfers. Therefore, Schenk voted on Proposal One because his vote was necessary for waiver under the Shareholder Agreement. However, because of Schenk's conflict of interest, the vote on Proposal One was tallied in two different ways: one tally including Schenk's shares other than the shares at issue in the 1999 Stock Sale; the other tally excluding all of his shares. When Schenk's shares were included in the tally, 3,168,200 shares were voted in favor of Proposal One and 400,000 shares (owned by McLaughlin and his wife) were voted against Proposal One. When Schenk's shares were excluded from the tally, 987,000 shares were voted in favor of Proposal One and 400,000 shares were voted against.

¶12    Proposal Two to ratify the 2005 Shareholders Waiver was voted for by a majority of the shareholders, not including Schenk. Specifically, 987,000 shares were voted in favor of Proposal Two and 400,000 shares were voted against.

¶13    On January 15, 2010, McLaughlin filed a Motion for Partial Summary Judgment and/or Declaratory Judgment Declaring the Invalidity of Corporate Actions. He argued "that the corporate actions taken on December 18, 2009 and January 6, 2010 were improperly undertaken for the specific purpose of circumventing the remand directive." In response, Cookietree and Schenk argued that our remand instruction had only "remanded for further action to resolve the conflict of interest," and asked the district court to recognize that the December 18, 2009 and January 6, 2010 corporate actions effectively ratified the 2005 Waivers. The district court disagreed with this reasoning and granted McLaughlin's motion. It held that McLaughlin was "entitled to the fairness hearing identified by the Supreme Court." Schenk and Cookietree then petitioned this court for interlocutory appeal, which was denied.

¶14    At a rule 16 conference set for the purpose of scheduling a trial and obtaining clarification on the procedure for the fairness hearing, the district court judge originally assigned to the case announced to the parties that he was retiring and that the case would be reassigned. Following the reassignment, the replacement judge convened a status conference where he stated that he

"certainly [was] not going to take the same position [on the fairness hearing] that [the retired judge] did" because he thought "that the corporation can try [to] fix [the 2005 Waiver issues]." He thereafter invited the parties to file motions for summary judgment.

¶15   Cookietree and Schenk filed such a motion, arguing that the December 18, 2009 and January 6, 2010 corporate actions "cured" any defect in the 2005 Waivers. McLaughlin opposed the motion, arguing that "'fairness' by its nature is a fact-intensive inquiry," making summary judgment improper. He also argued that the retired judge's denial of Cookietree and Schenk's Cross Motion for Summary Judgment was the law of the case and that, under the mandate rule, the district court and the parties were bound by this court's remand directive.

¶16   The replacement judge ruled that the post-remand corporate action "completely resolve[d] any issue concerning the conflict of interest that was found to have tainted the [2005 W]aivers." He therefore granted summary judgment in favor of Cookietree and Schenk. McLaughlin appealed.

¶17   On May 11, 2010, the Legislature amended section 16-10a-622 of the Utah Code in response to our opinion in *McLaughlin I*. That section now states that "[a] shareholder of a corporation, when acting solely in the capacity of a shareholder, has no fiduciary duty or other similar duty to any other shareholder of the corporation, including not having a duty of care, loyalty, or utmost good faith. This Subsection . . . applies to . . . a closely-held corporation." UTAH CODE § 16-10a-622(3). Legislative history indicates that the purpose of this amendment was to reverse a portion of our decision in *McLaughlin I*. Specifically, in advocating for passage of the bill, its sponsor described *McLaughlin I* as a "troubling decision" holding that "shareholders of a closely-held corporation have a fiduciary duty to the other shareholders of the corporation." Senate Business & Labor Committee Hearing, S.B. 197, 58th Leg., Gen. Sess. (Feb. 16, 2010) (statement of Sen. Liljenquist).

¶18   We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶19   "The application of the law of the case doctrine is ordinarily reviewed under an abuse of discretion standard." *M.F.K. v. S.V. (In re Adoption of A.F.K.)*, 2009 UT App 198, ¶ 15, 216 P.3d 980 (alternations omitted) (internal quotation marks omitted). "How-

ever, when a legal question is presented to an appellate court in law-of-the-case packaging, the abuse of discretion standard must yield to the correctness standard of review." *Id.* (alteration omitted) (citation omitted) (internal quotation marks omitted). Although McLaughlin argues that the standard of review in this case is correctness, we see no legal question presented in law of the case packaging. The issue is simply whether the replacement judge violated the law of the case doctrine when he ruled differently than the retired judge on an issue previously decided. Therefore, we apply the abuse of discretion standard to this issue.

¶20 Whether a district court complied with the mandate of an appellate court is a question of law, which we review for correctness. *See Amax Magnesium Corp. v. State Tax Comm'n*, 874 P.2d 840, 842 (Utah 1994); *Slattery v. Covey & Co.*, 909 P.2d 925, 927 (Utah Ct. App. 1995). Similarly, we review a district court's grant of summary judgment for correctness, with "the facts and all reasonable inferences [reviewed] in the light most favorable to the nonmoving party." *McLaughlin I*, 2009 UT 64, ¶ 14 (internal quotation marks omitted).

**ANALYSIS**

I. THE REPLACEMENT JUDGE'S RECONSIDERATION
OF THE RETIRED JUDGE'S RULING WAS PROPER
BECAUSE THE RETIRED JUDGE'S RULING WAS
NOT THE LAW OF THE CASE

¶21 McLaughlin argues that the retired judge's order of a fairness hearing was the law of the case and that the replacement judge should not have reconsidered the issue. Cookietree and Schenk argue that the replacement judge was not bound to follow the prior order. We hold that the retiring judge's ruling, in which he ordered a fairness hearing, did not fall within the law of the case doctrine. The replacement judge therefore was free to reconsider the issue.

¶22 Under the law of the case doctrine, "a court [may] decline to revisit issues within the same case once the court has ruled on them." *IHC Health Servs., Inc. v. D & K Mgmt.*, 2008 UT 73, ¶ 26, 196 P.3d 588. However, this doctrine is generally discretionary, with three exceptions for extraordinary circumstances in which reconsideration is mandatory.

> Law of the case does not prohibit a district court judge
> from revisiting a previously decided issue during the

course of a case, regardless of whether the judge has changed or remained the same throughout the proceedings. Rather, the doctrine *allows* a court to decline to revisit issues within the same case once the court has ruled on them.

*Mid-Am. Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 11, 216 P.3d 352 (internal quotation marks omitted). "While a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision. It may do so sua sponte or at the suggestion of one of the parties." *IHC Health Servs.*, 2008 UT 73, ¶ 27 (footnote omitted).

¶23 This rule correctly tracks rule 54(b) of the Utah Rules of Civil Procedure, which states that "any order or other form of decision, however designated, that adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Therefore, in this case, the replacement judge was free to reconsider the fairness hearing issue that had been previously ruled upon by the retired judge.

¶24 McLaughlin correctly points out that there are exceptions to the law of the case. In these situations, a judge is required to reassess a prior ruling. These situations are "(1) when there has been an intervening change of authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Mid-Am. Pipeline*, 2009 UT 43, ¶ 14 (internal quotation marks omitted). "While there are exceptions to the doctrine of law of the case, these exceptions function only to dictate when the district court has no discretion but rather *must* reconsider a previously decided, unappealed issue." *Id.* The exceptions do not operate to *bar* a replacement judge from reconsidering an issue previously ruled on by a prior judge in the same case. We therefore hold that the replacement judge did not abuse his discretion when he decided to re-visit the retired judge's decision ordering a fairness hearing.

## II. ALTHOUGH THE HOLDING OF *McLAUGHLIN I* THAT SHAREHOLDERS IN CLOSELY HELD CORPORATIONS OWE EACH OTHER FIDUCIARY DUTIES HAS BEEN SUPERSEDED BY STATUTE, THE STATUTE IS NOT DISPOSITIVE IN THIS CASE BECAUSE IT IS NOT RETROACTIVE

¶25 *McLaughlin I* concluded that shareholders in closely-held

corporations owe each other a heightened duty of "utmost good faith and loyalty." *McLaughlin v. Schenk*, 2009 UT 64, ¶¶ 18, 20, 220 P.3d 146. In response to *McLaughlin I*, the Legislature amended section 16-10a-622 to state that "[a] shareholder of a corporation, when acting solely in the capacity of a shareholder, has no fiduciary duty or other similar duty to any other shareholder of the corporation, including not having a duty of care, loyalty, or utmost good faith. This Subsection . . . applies to . . . a closely-held corporation." UTAH CODE § 16-10a-622(3).

¶26    The bill's sponsor described *McLaughlin I* as a "troubling decision" holding that "shareholders of a closely-held corporation have a fiduciary duty to the other shareholders of the corporation." Senate Business & Labor Committee Hearing, S.B. 197, 58th Leg., Gen. Sess. (Feb. 16, 2010) (statement of Sen. Liljenquist). He explained that

> this bill just basically clarifies that a shareholder of a corporation, when acting solely in the capacity of a shareholder, has no fiduciary duty. When they're just a shareholder, they do not have a fiduciary duty to other shareholders, and this clarifies that the fiduciary duties are basically held with the directors of the company. So this, hopefully, will correct that issue in the *McLaughlin v. Schenck* [sic.] case.

*Id.*

¶27    The plain language and legislative history of section 622(3) are clear: shareholders, whether in a public corporation or a closely-held corporation, do not owe each other any fiduciary duties. As Cookietree and Schenk correctly note, "[s]ection 622(3) supersedes the *McLaughlin I* court's holding that shareholders in closely-held corporations owe their co-shareholders fiduciary obligations." It is clear that the *McLaughlin I* holding regarding shareholder fiduciary duties is superseded by statute. But, section 622(3) does not apply to the facts at issue here since they transpired prior to its passage.

¶28    As a general rule, statutes are not retroactive without clear evidence to the contrary. *Warne v. Warne*, 2012 UT 13, ¶ 25, 275 P.3d 238; see also UTAH CODE § 68-3-3 ("A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive."). Because section 622(3) is silent as to retroactivity, it does not apply retroactively. And because the stock purchase, the 2005 Waivers, and the 2009 Ratifications all occurred prior to the

passage of the amendment, section 622(3) does not apply and is not dispositive here.

### III.  THE DISTRICT COURT DID NOT VIOLATE OUR MANDATE IN *McLAUGHLIN I* BY DECLINING TO HOLD A FAIRNESS HEARING BECAUSE NOTHING IN OUR OPINION PRECLUDED THE  CORPORATION FROM TAKING POST-REMAND ACTION

¶29    The replacement judge granted summary judgment in favor of Schenk and Cookietree after concluding that the post-remand corporate action resolved any issue concerning the conflict of interest that had tainted the 2005 Waivers.  McLaughlin argues that decision was erroneous under the mandate rule.  He specifically argues that the district court was in error when it considered actions taken by the corporation after remand instead of holding a fairness hearing.  Cookietree and Schenk argue that our remand instruction in *McLaughlin I* did not preclude the district court from taking a course of action other than a fairness hearing and in fact "specifically authorized . . . disinterested directors' or shareholders' action as a means of resolving the conflict of interest that tainted the 2005 Waivers."  We agree with Cookietree and Schenk.

¶30    There was nothing in our *McLaughlin I* opinion forbidding Cookietree from attempting to remedy the defects in the 2005 Waivers using procedures available under then-applicable law and its corporate governance documents.  The disinterested Board and the disinterested shareholders were therefore free to act, and if they were successful in ratifying the 2005 Waivers, then our order for a fairness hearing would necessarily be moot.  Thus, the district court did not violate our remand order when it considered the validity of other avenues for resolving the nontransaction conflict of interest created by the 2005 Waivers.  We therefore address the post-remand corporate action below.

### IV.  SUMMARY JUDGMENT WAS PROPER BECAUSE THE 2009 RATIFICATION BY THE BOARD MOOTED THE NEED FOR A FAIRNESS HEARING

¶31    McLaughlin argues that summary judgment was improper.  Specifically, he argues that the post-remand actions by the Board and shareholders could not be effective as a matter of law because there remained disputed issues of fact as to the adequacy and fairness of the information provided to the disinterested director.  We agree with Cookietree and hold that the 2009 Ratification by the Board of Directors resolved any conflict of interest

problem, rendering summary judgment appropriate.

¶32   Following our remand in 2009, Cookietree's three directors, Greg Schenk, Harold Rosemann, and David Rudd, met to attempt to ratify the 2005 Waivers. "Prior to the meeting, David Rudd analyzed and reviewed documentation containing all of the material facts concerning the [s]tock [s]ale and the 2005 Waivers, including, but not limited to, the 2005 Waivers themselves, the 1991 Shareholders' Agreement, Cookietree's financial statements and other financial information, and the *McLaughlin* decision." Schenk and Rosemann abstained from voting due to conflicts of interest. Rudd alone then voted to ratify the 2005 Waivers and to presently waive the stock transfer provision of the 1991 Shareholder Agreement.

¶33   Cookietree and Schenk are correct that such a vote is allowable under sections 850–853 of the Corporation Act, which specifies the requirement for quorums and directors' actions. These sections of the Corporation Act expressly contemplate that there may be situations where corporate directors have conflicts of interest and specifies mechanisms for handling such circumstances.[1]

¶34   Under section 851, "[a] director's conflicting interest transaction may not be enjoined, be set aside, or give rise to an award of damages or other sanctions . . . solely because the director . . . has an interest in the transaction, if:  directors' action respecting the transaction was at any time taken in compliance with [s]ection 16-10a-852." UTAH CODE § 16-10a-851(2)(a).  Under section 852, "a quorum for purposes of action that complies with this section" is a "majority of the qualified directors on the board of directors," and directors' action is taken if there is the affirmative vote of the majority of those qualified directors.  *Id*. § 16-10a-852(1)-(3).  Section 850 defines a "qualified director" as

> any director who does not have either a conflicting interest respecting the transaction, or a familial, financial, professional, or employment relationship with a second director who does have a conflicting interest respecting the transaction, which relationship would, in the circumstances, reasonably be expected

---

[1] In *McLaughlin I*, we held that, as a matter of law, the provisions in the Corporation Act addressing conflicting interest transactions also extend to nontransaction conflicts of interest, like the one at issue here.  *McLaughlin v. Schenk*, 2009 UT 64, ¶ 37, 220 P.3d 146.

> to exert an influence on the first director's judgment
> when voting on the transaction.

*Id.* § 16-10a-850(3).

¶35 In this case, the parties agree that the only qualified director on Cookietree's Board was Rudd. Thus, Schenk and Cookietree assert that Rudd's vote to waive the stock transfer provisions was sufficient.

¶36 In response, McLaughlin argues that since three board members were present at the meeting and two were disqualified, it was impossible to have a majority because "[o]ne of three is not a majority." While McLaughlin is certainly correct that one of three is not a majority, the Corporation Act does not require a majority vote of all directors present. It requires only a quorum, which it specifically defines as a majority vote of all "qualified directors." *Id.* § 16-10a-852(3).

¶37 McLaughlin makes much of the fact that Cookietree's Bylaws state that "the act of the majority of the directors present . . . shall . . . be the act of the Board." He argues that because only Rudd voted to ratify the 2005 Waiver when there were three directors present, there was no majority. But this provision of the Bylaws simply restates the more general provision of the Corporation Act relating to quorums and voting. *See Id.* § 16-10a-824(3) (stating that "the affirmative vote of a majority of directors present is the act of the board of directors.") Thus, it is not this section, but rather section 852, which provides the more specific requirements related to conflicted situations. Thus, when dealing with conflicts of interest, it is section 852 that fills in any potential gaps in a corporation's articles and bylaws.

¶38 Under the circumstances presented here, the only qualified director was Rudd. As the sole disinterested director, Rudd's vote in favor of the 2009 Ratification constituted a majority of the "qualified" directors entitled to vote. In fact, section 852 clearly provides that "[d]irectors' action that otherwise complies with this section is not affected by the presence or vote of a director who is not a qualified director." *Id.* § 16-10a-852(3). Here, the only qualified board member ratified the transfers. And under section 851(2) of the Utah Code, once director action is taken to ratify a conflicted transaction or "nontransaction," it "may not be enjoined, be set aside, or give rise to an award of damages or other sanctions" as a matter of law.

¶39    McLaughlin makes much of the "adequacy of the disclosures made to" Rudd.  He argues that

> Mr. Rudd did not know and still does not know material pieces of information which would allow him to evaluate the circumstances and fairness of the disputed stock transfer.  For example, he does not know what consideration was paid for the disputed shares in 1999 or whether the provisions of the Shareholders Agreement setting forth how shares were to be valued were followed in 1999.  He does not know how many shares Sam and Kim McLaughlin . . . would have been able to acquire in 1999, had they been given the opportunity or the value of those shares in 2010 compared to 1999. . . . He has never talked to Anna Schenk, the seller of 545,200 shares.  He has never talked to Sam McLaughlin, the shareholder who challenged the transaction.  He has never talked to Greg Schenk, the buyer, about the transaction. . . . There was no counter-opinion contained in the Disclosure Statement [provided to shareholders].  The document was drafted by litigation counsel and therefore subject to a reasonable inference that it was advocacy, not information.  The Disclosure Statement was single spaced, rambling[,] and confusing to read.

¶40    McLaughlin's alleged factual disputes about Rudd's knowledge regarding the stock transfers are legally irrelevant. There is nothing in the Corporation Act or the Bylaws requiring that qualified directors have a perfect knowledge as to all matters on which they cast a vote.  The only requirement is that they be disinterested and that the conflicted director disclose "the existence and nature of the conflicting interest . . . and all facts known to the director respecting the subject matter of the transaction that an ordinarily prudent person would reasonably believe to be material to a judgment about whether or not to proceed with the transaction." *Id.* §§ 16-10a-850(4), 16-10a-852(3).  And McLaughlin does not even attempt to argue that Rudd was conflicted.

¶41    The 2009 Ratification resolved any conflict of interest problem with the transfer of shares to Schenk. Summary judgment was therefore proper.

## V. BECAUSE THE 2009 RATIFICATION BY THE BOARD DISPOSES OF THE CASE, WE DECLINE TO ADDRESS THE 2010 SHAREHOLDER VOTE

¶42    Because the 2009 Ratification by the Board mooted the need for a fairness hearing and completely resolved any conflict of interest problem, questions regarding the validity of the 2010 shareholder vote are moot. We therefore decline to address them.

### CONCLUSION

¶43    We hold that the district court did not violate the law of the case doctrine. Under that doctrine, it remained free to reconsider an issue it had previously decided. We additionally hold that the district court did not violate our mandate in *McLaughlin I*. There was nothing in *McLaughlin I* to prohibit the corporation from taking post-remand action. Although the holding in *McLaughlin I* relating to shareholder fiduciary duties has been superseded by statute, because the statute is not retroactive, it is not dispositive in this case. The 2009 Ratification by the Board of Directors mooted the need for a fairness hearing by completely resolving any conflict of interest problem. We therefore affirm the summary judgment entered by the district court.