**2016 UT App 198**

# THE UTAH COURT OF APPEALS

L. LANE BLACKMORE, BLACKMORE CANNON DEVELOPMENT
COMPANY LLC, AND THE HOME COMPANY,
Appellants and Cross-appellees,
*v.*
L&D DEVELOPMENT INC., SHADOW CANYON LAND COMPANY LLC,
SHADOW GLEN 420 INC., GEMSTONE HOMES INC., GEMSTONE
PROPERTIES INC., AND FRANK LINDHARDT,
Appellees and Cross-appellants.

Amended Opinion[1]
No. 20131177-CA
Filed September 15, 2016

Fifth District Court, St. George Department
The Honorable Gary D. Stott
The Honorable James L. Shumate
No. 030501322

Justin D. Heideman and Justin R. Elswick, Attorneys
for Appellants

Jerome Romero, M. Eric Olmstead, and David L.
Elmont, Attorneys for Appellees

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.[2]

---

1. This Amended Opinion replaces the Opinion in Case No.
20131177-CA issued on June 23, 2016. In response to Appellees'
petition for rehearing, revisions were made to footnote 9 and
paragraphs 21, 39, 41, 43, and 46.

2. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BENCH, Senior Judge:

¶1     Plaintiffs L. Lane Blackmore, Blackmore Cannon Development Company LLC (BCDC), and The Home Company (collectively, Blackmore) appeal a jury verdict in favor of Defendants L&D Development Inc., Shadow Canyon Land Company LLC, Shadow Glen 420 Inc., Gemstone Homes Inc., Gemstone Properties Inc., and Frank Lindhardt (collectively, Defendants). We affirm in most respects, but we vacate the award of attorney fees.


BACKGROUND[3]

¶2     On August 21, 2002, Mr. Blackmore and BCDC signed a Development Agreement with L&D Development and Shadow Canyon Land Company (collectively, Shadow Canyon). The Development Agreement concerned the proposed development of real property owned by Shadow Canyon in Washington County, Utah (the Property).

¶3     The Property was already partially developed, and it secured debts owed to U.S. Bank and State Bank of Southern Utah. The Development Agreement contemplated that Blackmore and Shadow Canyon would become co-owners of BCDC, which would then own the Property and manage its development. The Home Company, managed by Mr. Blackmore, contracted with BCDC to perform construction on the project.

¶4     Under the terms of the Development Agreement, Mr. Blackmore promised to (1) bring current accrued interest owed to U.S. Bank in the amount of approximately $70,000, (2) bring

---

3. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict." *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 3, 82 P.3d 1064 (citation and internal quotation marks omitted).

current all property taxes on the Property, (3) "[t]ake such reasonable steps as necessary to obtain an extension on the [U.S.] Bank loan," and (4) pay Shadow Canyon $50,000 "at closing." Mr. Blackmore also promised that he would market and sell three existing homes on the Property and that he would build and sell additional homes at his own expense. In exchange, Shadow Canyon would transfer the Property to BCDC via special warranty deed. Although the Development Agreement did not include a specific date for closing, the property taxes were due on November 30, 2002.

¶5 Mr. Blackmore performed some, but not all, of his obligations under the Development Agreement. He sold the three existing homes on the Property and began construction on two more. He also paid off the debt owed to State Bank of Southern Utah. But Mr. Blackmore never tendered the $50,000 payment to Shadow Canyon, nor did he pay the property taxes or the U.S. Bank interest. And although he was engaged in discussions with U.S. Bank throughout the autumn of 2002, he did not succeed in renegotiating the loan with U.S. Bank.

¶6 For its part, Shadow Canyon never transferred title to the Property to BCDC. Instead, Shadow Canyon ultimately sold the Property to Shadow Glen 420. This transaction closed on January 31, 2003.

¶7 In July 2003, Blackmore sued Shadow Canyon; Shadow Glen 420 and its registered agent, Frank Lindhardt; and Gemstone Homes and Gemstone Properties, both of which Mr. Lindhardt either owned or represented. For simplicity, we will refer to Mr. Lindhardt, Shadow Glen 420, Gemstone Homes, and Gemstone Properties collectively as Lindhardt.

¶8 Blackmore's complaint stated claims against Shadow Canyon for breach of the Development Agreement, breach of the covenant of good faith and fair dealing, and unjust enrichment. It also stated a claim against Lindhardt for intentional interference with economic relations. Blackmore sought to void

the January 31, 2003 transfer of the Property and raised a claim for specific performance, asking the court to order Shadow Canyon to transfer the Property to BCDC. In its prayer for relief, Blackmore also requested damages.

¶9     Both sides moved for summary judgment, each arguing that the other had materially breached the Development Agreement first. On July 10, 2008, the trial court entered an order granting Blackmore's motion and denying Shadow Canyon's motion (the 2008 Summary Judgment Order). The court reasoned that Shadow Canyon's "obligation to convey the property . . . was a matter of 'prime importance'" and that its "failure of performance . . . went to 'the very object' of the contract." (Quoting *Coalville City v. Lundgren*, 930 P.2d 1206, 1210 (Utah Ct. App. 1997).) Because the conveyance was the "most significant duty required of Shadow Canyon," the court further reasoned that Shadow Canyon's "failure to convey the property as called for in the [Development Agreement]" was a material breach that "predated" Blackmore's failure to pay taxes by November 30, 2002, and "any associated breach." The court also explained that "no identifiable 'closing' occurred . . . that would have triggered Blackmore's duty to make the $50,000 payment." Accordingly, the court granted summary judgment to Blackmore "on the issue of whether Defendants breached material terms of the [Development Agreement]." Lindhardt moved the court to reconsider this ruling, but the trial court declined.

¶10     Following the trial court's grant of a writ of attachment to Blackmore, Defendants sought, and this court granted, interlocutory review. In 2012, this court "affirm[ed] the trial court's grant of a writ of attachment but vacate[d] the remedy ordered to the extent that it exceed[ed] the scope of a prejudgment writ of attachment." *Blackmore v. L&D Dev., Inc.*, 2012 UT App 43, ¶ 1, 274 P.3d 316.

¶11     At the first hearing after this court's decision, Shadow Canyon's counsel stated that Judge James Shumate, who was

presiding over the case, had mentioned once in court that "when a matter was appealed from [his] court, and . . . when [he was] . . . reversed, upon suggestion of a party, [he] frequently would recuse [himself]." Counsel then asked Judge Shumate if he would consider recusing himself based on the fact that the court of appeals had reversed an aspect of his order regarding the prejudgment writ. Judge Shumate responded, "When I am reversed, I think it is at least an issue that should be addressed to the parties so that they will not feel as though there is some sort of backlash in further proceedings." Judge Shumate then noted his desire for the parties to feel that they were in front of a fair tribunal and also disclosed that he had recently formed an acquaintance outside of work with one of the attorneys involved in the case. Because of these concerns, Judge Shumate elected to recuse himself from the matter. Blackmore objected, but Judge Shumate reaffirmed his decision to recuse.

¶12    Senior Judge Gary Stott was subsequently assigned to the case. Shortly thereafter, Lindhardt filed a second motion to reconsider, requesting that the court set aside the 2008 Summary Judgment Order. Lindhardt argued that the Development Agreement was ambiguous as to whether the parties were required to perform simultaneously. Lindhardt also contended that Judge Shumate erred in ruling as a matter of law that Shadow Canyon's breach was material, because the issue of materiality was a question of fact for the jury. Judge Stott agreed with Lindhardt. The court explained that the 2008 Summary Judgment Order "took away from the jury the very factual issues that the jury should have been deciding," namely, "the ultimate question of the material breach" and "what was to take place as contemplated under" the Development Agreement. Accordingly, Judge Stott set aside the 2008 Summary Judgment Order.

¶13    At a pretrial hearing, the trial court granted Blackmore's motion for summary judgment on the issue of whether Lindhardt was a bona fide purchaser for value. Specifically, the

court ruled as a matter of law that Mr. Lindhardt was not a bona fide purchaser for value, because he had either actual or constructive notice of Blackmore's prior interest in the Property. The court also ruled that the proper measure of Blackmore's possible damages at trial would be the market value of the Property at the time of the breach less the contract price.

¶14   At trial, Blackmore contended that Shadow Canyon breached the Development Agreement by failing to transfer title to the Property to BCDC and by selling the Property to Lindhardt. Defendants countered that Blackmore breached the Development Agreement first and thereby excused Shadow Canyon from further contract performance. Defendants also argued that even if Shadow Canyon was in breach of contract, Blackmore had abandoned its rights under the Development Agreement.

¶15   The parties introduced into evidence various letters exchanged between the parties and their attorneys to shed light on the breakdown of their relationship and the Development Agreement. On November 21, 2002, Shadow Canyon's attorneys, Thomas Bayles and V. Lowry Snow, wrote to Mr. Blackmore, asking him to contact them soon regarding his ability to obtain financing for the project and his intentions with respect to the Development Agreement.

¶16   Sometime during the following week and around the Thanksgiving holiday, Mr. Blackmore called Mr. Snow (the Thanksgiving Conversation). Mr. Snow testified at trial that during the Thanksgiving Conversation, Mr. Blackmore had expressed that he "simply [could not] do the deal." According to Mr. Snow, Mr. Blackmore had indicated that he had tried to find investors and had tried to complete the deal but wanted to let Mr. Snow and Shadow Canyon know that he was unable to follow through on his obligations. Although Mr. Snow acknowledged that Mr. Blackmore may have been referring to only the U.S. Bank transaction, Mr. Snow came away from the

Thanksgiving Conversation with the "impression that [Mr. Blackmore], although he tried sincerely very hard, was simply not able to make this transaction [with Shadow Canyon] happen."

¶17    On December 18, 2002, Shadow Canyon's attorneys faxed a letter to Blackmore's attorney. The letter indicated that Shadow Canyon understood that Blackmore could not obtain financing to perform under the Development Agreement. The letter noted that Shadow Canyon stood ready and willing to perform but asserted that Blackmore was in breach. Additionally, the letter warned Blackmore's attorney that if no one responded within two days, Shadow Canyon would begin making other plans and would understand that Blackmore agreed with the letter's contents.

¶18    Blackmore and its attorney did not respond until nearly three weeks later. On January 9, 2003, Blackmore's attorney wrote to Mr. Bayles, explaining that his "client was not in receipt of [the] letter dated December 18, 2002 until January 6, 2003." The letter expressed Mr. Blackmore's objection to Shadow Canyon's claim that Blackmore had breached the Development Agreement. Moreover, Mr. Blackmore believed that the Thanksgiving Conversation had been misconstrued. According to Mr. Blackmore, he had intended to convey during the Thanksgiving Conversation his position that the terms of the U.S. Bank extension were unacceptable and that he hoped the dialogue would continue. The letter also proposed terms under which Blackmore would be willing to release the terms of the Development Agreement.

¶19    While specifically finding some facts favorable to Blackmore, the jury ultimately returned a verdict in favor of Defendants. As indicated on the special verdict forms, the jury found that Mr. Blackmore was not required to pay the $50,000 at the same time that Shadow Canyon was required to transfer title to the Property. The jury then found that Blackmore did not

commit a material breach of the Development Agreement but that Shadow Canyon did materially breach the Development Agreement. Despite finding Shadow Canyon in breach of contract, the jury found that Blackmore had abandoned its right under the Development Agreement to develop the Shadow Canyon project. As a result, Shadow Canyon was not held liable to Blackmore for breach of contract.

¶20 Blackmore subsequently moved for judgment notwithstanding the verdict, arguing that the evidence was insufficient to support the jury's finding of abandonment and requesting that the court award Blackmore attorney fees and specific performance. The trial court denied the motion. It explained that "the verdict is supported by the evidence and the Findings of the jury are not contrary to the law give[n] and the facts presented at trial."

¶21 The trial court also awarded Defendants their claimed attorney fees. The court reasoned that the jury's verdict "support[ed] a finding that the Defendants prevailed against [Blackmore's] claims on the contract issues and that the jury's finding of abandonment supported the conclusion that [Shadow Canyon was] not liable on [Blackmore's] contract claims." Citing Utah Code section 78B-5-826, the court concluded that Shadow Canyon was "the prevailing party on [Blackmore's] contract claims, and as such, [was] entitled to attorney's fees in defending such claims." Blackmore appeals.

## ISSUES AND STANDARDS OF REVIEW

¶22 First, Blackmore contends that Judge Shumate erred in recusing himself from this matter. Generally, we review a judge's failure to recuse him or herself for correctness. *See Lunt v. Lance*, 2008 UT App 192, ¶ 7, 186 P.3d 978. But where a judge chooses to recuse him or herself even though recusal was perhaps not required, we review that decision for abuse of discretion. *Cf. State v. Neeley*, 748 P.2d 1091, 1094–95 (Utah 1988)

("[W]hile we recommend the practice that a judge recuse himself where there is a colorable claim of bias or prejudice, absent a showing of actual bias or an abuse of discretion, failure to do so does not constitute reversible error . . . ."); *West Jordan City v. Goodman*, 2006 UT 27, ¶ 21, 135 P.3d 874 ("[J]udges are not subject to disqualification in *every* situation where their impartiality is questioned, particularly when the potential for bias is remote.").

¶23 Second, Blackmore contends that Judge Stott erred in setting aside Judge Shumate's 2008 Summary Judgment Order, arguing that by doing so, Judge Stott violated the law of the case doctrine. "The application of the law of the case doctrine is ordinarily reviewed under an abuse of discretion standard. However, when a legal question is presented to an appellate court in law-of-the-case packaging, the abuse of discretion standard must yield to the correctness standard of review." *McLaughlin v. Schenk*, 2013 UT 20, ¶ 19, 299 P.3d 1139 (citation and internal quotation marks omitted).

¶24 Third, Blackmore contends that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict on the question of abandonment, arguing that insufficient evidence existed to support abandonment. A trial court may grant a motion for judgment notwithstanding the verdict "only if there is no basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's determination." *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 18, 309 P.3d 201 (citation and internal quotation marks omitted). We review the trial court's decision on a motion for judgment notwithstanding the verdict for correctness. *Id.*[4]

---

4. Blackmore also contends that the trial court erred in limiting Blackmore's evidence regarding damages. But because we affirm

(continued…)

¶25    Finally, Blackmore contends that the trial court erred by awarding attorney fees to Shadow Canyon and by failing to award attorney fees to Blackmore. "A challenge to an award of attorney fees on the basis that the relevant contract or statute does not entitle the prevailing party to fees presents a question of law that we review for correctness." *Brodkin v. Tuhaye Golf, LLC*, 2015 UT App 165, ¶ 34, 355 P.3d 224; *see also id.* ¶ 34 n.5 ("We review certain other issues surrounding the award of attorney fees for an abuse of discretion.").[5]

ANALYSIS

I. Judge Shumate's Recusal

¶26    Blackmore contends that Judge Shumate erred in recusing himself from this case. Specifically, Blackmore asserts that Judge Shumate and Defendants ignored rule 63 of the Utah Rules of Civil Procedure, which governs motions to disqualify a judge, and that "[h]ad proper procedure been followed Judge Shumate

---

(…continued)

the trial court's denial of the motion for judgment notwithstanding the verdict on the issue of abandonment, we need not reach issues related to Blackmore's evidence on damages. *See Eldridge v. Farnsworth*, 2007 UT App 243, ¶ 27, 166 P.3d 639 (affirming the trial court's conclusion that the parties had abandoned the contract and that therefore a party was not entitled to specific performance or damages).

5. Defendants cross-appeal several of the trial court's decisions. Defendants ask for relief on their cross-appeal "[i]f . . . the Court determines that the final judgment is otherwise subject to reversal on Blackmore's direct appeal." Because we ultimately affirm the trial court's judgment and reject Blackmore's claims of error on its direct appeal, except for the attorney fees issue, we do not reach Defendants' arguments on cross-appeal.

could not have disqualified himself based on [Defendants']
untimely, improper, oral motion." Defendants counter that
because no motion for disqualification was filed, rule 63 does not
apply to this case. Defendants further contend that even if Judge
Shumate erred in recusing himself, no prejudice resulted from
the appointment of a new judge.

¶27    "A judge should be disqualified when circumstances arise
in which the judge's impartiality might reasonably be
questioned." *Dahl v. Dahl*, 2015 UT 79, ¶ 49 (citation and internal
quotation marks omitted); *see also* Utah Code Jud. Conduct
2.11(A). Rule 2.11 of the Utah Code of Judicial Conduct contains
an illustrative, but not exhaustive, list of disqualifying
circumstances. Utah Code Jud. Conduct 2.11(A). The comments
to the rule make clear that a judge may recuse, "regardless of
whether any of the specific [disqualifying circumstances] apply,"
so long as the circumstances are such that "the judge's
impartiality might reasonably be questioned." *Id.* R. 2.11(A)
& cmt. 1; *see also Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 767
P.2d 538, 544 n.5 (Utah 1988) ("[A]ctual bias need not be found to
support disqualification. An appearance of bias or prejudice is
sufficient for disqualification, but even disqualification because
of appearance must have some basis in fact and be grounded on
more than mere conjecture and speculation." (citation omitted)).
Furthermore, the comments indicate that judges should consider
recusing themselves if disqualifying circumstances arise
"regardless of whether a motion to disqualify is filed." Utah
Code Jud. Conduct 2.11 cmt. 2. In other words, when
circumstances arise that, in the judge's opinion, call into question
the judge's impartiality, the judge may opt to recuse even if the
parties have not filed a rule 63 motion.

¶28    Blackmore has not shown that Judge Shumate exceeded
his broad discretion in choosing to recuse himself from this
matter. Judge Shumate elected to recuse himself due to his
concern that after a partial reversal on appeal, the parties might
fear "some sort of backlash in further proceedings" and might

doubt whether they were before a fair tribunal. Judge Shumate also cited his recent acquaintance outside of work with one of the attorneys. Although we are not prepared to say that Judge Shumate was required to recuse himself under the circumstances of this case, we cannot say that his decision to do so was an abuse of discretion. Blackmore only briefly suggests that Judge Shumate lacked legitimate grounds to recuse himself. Indeed, Blackmore focuses on Defendants' failure to file a rule 63 motion to disqualify and asserts that their failure to comply with rule 63's procedures precluded Judge Shumate from recusing himself. *See generally* Utah R. Civ. P. 63(b) (2012) (providing, among other things, that a rule 63 motion shall be filed within twenty-one days of when disqualifying circumstances arise and shall be supported by an affidavit and certificate of good faith).[6] However, "regardless of whether a motion to disqualify is filed," judges can, sua sponte, evaluate a possible recusal. *See* Utah Code Jud. Conduct 2.11 cmt. 2. Here, Shadow Canyon's counsel raised the issue of disqualification in open court without formally filing a rule 63 motion. The absence of a rule 63 motion did not prevent Judge Shumate from considering any disqualifying circumstances. We thus conclude that Blackmore has not demonstrated that Judge Shumate exceeded his discretion in choosing to recuse himself.

## II. Judge Stott's Setting Aside of the 2008 Summary Judgment Order

¶29    Next, Blackmore contends that Judge Stott violated the law of the case doctrine by setting aside Judge Shumate's 2008 Summary Judgment Order. According to Blackmore, "the law of the case precluded Judge Stott from reversing Judge Shumate's

---

6. Because rule 63 of the Utah Rules of Civil Procedure has been amended as of May 1, 2016, we cite the rule in effect when Judge Shumate recused himself in 2012.

July 10, 2008 Order" in which Shadow Canyon was "found to be the primary breaching party."[7] Further, Blackmore contends that it was prejudiced by Judge Stott's decision because the decision "crippled Blackmore's long established trial strategy, allowed Defendants to raise the affirmative defense of abandonment, and altered nearly *six years* of case precedent." Defendants respond that Judge Stott's decision was proper because "when a judge is replaced in a pending action, the replacement becomes the 'same judicial officer' as the replaced [judge], and retains the same authority to reverse the court's prior orders."

¶30    Under the law of the case doctrine, "a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *Thurston v. Box Elder County*, 892 P.2d 1034, 1037 (Utah 1995). "Depending on the procedural posture of a case . . . , the district court may or may not have discretion to reconsider a prior decision it has made." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588. One branch of the doctrine, known as the mandate rule, "dictates that a prior decision of a district court becomes mandatory after an appeal and remand." *Id.* ¶ 28. "The mandate rule . . . binds both the district court and the parties to honor the mandate of the appellate court." *Id.* Nevertheless, on remand from an appeal, the district court retains discretion to decide whether to reconsider "any issue which was not expressly or impliedly disposed of on appeal." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) (citation and internal quotation marks omitted*); see also Peak Alarm Co. v. Werner*, 2013 UT 8, ¶ 13, 297 P.3d 592 (holding that the district court did not exceed "the scope of the remand" by addressing issues on which the appellate court had not ruled); *Utah Dep't of Transp. v. Ivers*, 2009 UT 56, ¶ 12, 218 P.3d 583 (suggesting that a district court on

---

7. Blackmore does not challenge the underlying merits of the denial of summary judgment on the breach issue and instead limits its argument to the law of the case doctrine.

remand from an appeal may decide "issues [that] are left open by [the appellate court's] judgment or decree" (second alteration in original) (citation and internal quotation marks omitted)).

¶31 The Utah Supreme Court has explained that the substitution of a new judge does not alter the court's discretion to modify a prior decision:

> Law of the case does not prohibit a district court judge from revisiting a previously decided issue during the course of a case, regardless of whether the judge has changed or remained the same throughout the proceedings. Rather, the doctrine *allows* a court to decline to revisit issues within the same case once the court has ruled on them.

*McLaughlin v. Schenk*, 2013 UT 20, ¶ 22, 299 P.3d 1139 (citation and internal quotation marks omitted). "While a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision . . . sua sponte or at the suggestion of one of the parties." *IHC Health Servs.*, 2008 UT 73, ¶ 27 (footnote omitted); *accord* Utah R. Civ. P. 54(b) (providing that when a case involves multiple claims or parties, any order or other decision that does not adjudicate all of the claims is subject to revision at any time before a final judgment on all the claims). "This is true even when a second judge has taken over the case because the two judges, while different persons, constitute a single judicial office." *PC Crane Serv., LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 43, 273 P.3d 396 (citation and internal quotation marks omitted). Three situations require the court to reconsider a matter: "(1) when there has been an intervening change of authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 14, 216 P.3d 352 (citation and internal quotation marks

omitted). These exceptions to the law of the case doctrine "function only to dictate when the district court has no discretion but rather *must* reconsider a previously decided, unappealed issue." *Id.* Thus, the supreme court has observed that these "exceptions do not operate to *bar* a replacement judge from reconsidering an issue previously ruled on by a prior judge in the same case." *McLaughlin*, 2013 UT 20, ¶ 24.

¶32   Here, Blackmore has not shown that the law of the case doctrine forbade Judge Stott from reconsidering the 2008 Summary Judgment Order. The issues decided in that order were not issues that this court evaluated on interlocutory review. *See generally Blackmore v. L&D Dev., Inc.*, 2012 UT App 43, ¶ 1, 274 P.3d 316. Thus, the mandate rule is not implicated. Even though it was Judge Shumate who issued the 2008 Summary Judgment Order, the law of the case doctrine did not bar Judge Stott from revisiting the still-interlocutory 2008 Summary Judgment Order. *See IHC Health Servs.*, 2008 UT 73, ¶ 27. Accordingly, we conclude that Judge Stott did not exceed his discretion by setting that order aside.

III. The Denial of Blackmore's Motion for Judgment
Notwithstanding the Verdict on the Issue of Abandonment

¶33   Blackmore contends that the trial court erred in denying its motion for judgment notwithstanding the verdict, arguing that the evidence was insufficient to support the jury's verdict that Blackmore had abandoned its rights under the Development Agreement. Blackmore contends that its statements and actions could not be construed as "a clear, unequivocal, event of abandonment."[8]

---

8. Blackmore also asserts that Shadow Canyon "must mutually acquiesce in, or permit abandonment" and that the evidence shows "mutual acquiescence did not occur." Because

(continued…)

¶34 We begin by noting that "[i]t is the exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses, and we will not overturn a verdict on a challenge to the sufficiency of the evidence [s]o long as some evidence and reasonable inferences support the jury's findings." *Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 36, 31 P.3d 557 (alterations in original) (citations and internal quotation marks omitted). Furthermore, "[t]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict when the sufficiency of the evidence is challenged on appeal." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶35 Under Utah law, "a contract is abandoned when one party 'show[s] by unequivocal acts that he regard[s] the agreement as abandoned,' and the other party acquiesces." *Watkins v. Henry Day Ford*, 2013 UT 49, ¶ 33, 304 P.3d 841 (alterations in original) (quoting *Wallace v. Build, Inc.*, 402 P.2d 699, 701 (Utah 1965)). Likewise, "a contract may be abandoned by the parties' express assent or through acts or conduct of the parties inconsistent with the continued existence of the contract." *Id.* (citation, emphasis, and internal quotation marks omitted). Whether abandonment of a contract has occurred must be assessed in light of "all the facts and circumstances surrounding

---

(…continued)

Blackmore's motion for judgment notwithstanding the verdict focused on whether there was a basis in the evidence for the jury to conclude that Blackmore had abandoned the contract, this argument about Shadow Canyon's acquiescence is not preserved, and we therefore do not consider it. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (explaining that an issue is preserved when the issue is presented in such a way that the trial court has an opportunity to rule on the issue and that "[i]ssues that are not raised at trial are usually deemed waived").

the transaction, and the proof of abandonment must be made by clear, unequivocal, and decisive evidence." *Id.* (citation and internal quotation marks omitted).

¶36    In support of its argument that the trial court should have granted its motion for judgment notwithstanding the verdict, Blackmore relies on Mr. Blackmore's testimony that he did not intend to abandon the Development Agreement and that his intended meaning was only that he was no longer pursuing refinance options with U.S. Bank. Blackmore also relies on Mr. Snow's testimony, which it believes tends to show that the Thanksgiving Conversation did not constitute a clear termination of the Development Agreement.

¶37    Blackmore stresses the conflicting evidence and the inferences that could be drawn in its favor, but it has not persuaded us that there was no basis in the evidence from which the jury could conclude that Blackmore had abandoned the Development Agreement. In particular, Mr. Snow, Shadow Canyon's counsel, testified that during the Thanksgiving Conversation, Mr. Blackmore had expressed that he "simply [could not] do the deal." Mr. Snow stated,

> Mr. Blackmore indicated to me that the reason that he was calling was to—and I don't remember the exact words, but this is my recollection, that he wanted to let me know because he felt like he had some obligation to let me know that he was not able to do the deal, not for me but for the benefit of my client.
>
> I believed that Mr. Blackmore at that time what I thought that he was saying is "I think it's important that your client know that I simply cannot do the deal. I've tried to find some investors. I've tried to find the ability to complete

this, but I'm not able to do it, and I need to let you know that."

Additionally, at least two other witnesses testified that Mr. Blackmore indicated that he was "done with the project": one of Blackmore's employees stated that Mr. Blackmore indicated that he did not see a way to secure financing necessary to continue with the project, and a U.S. Bank representative, with whom Blackmore had been negotiating, reported that Mr. Blackmore said that he was "not moving forward with the project." Although Mr. Blackmore offered contradictory evidence, the jury was entitled to disbelieve Mr. Blackmore's self-serving version of events. S*ee Brewer*, 2001 UT 77, ¶ 36. The jury also would have been justified in viewing the other witnesses' testimony as clear and decisive evidence of abandonment, *see Watkins*, 2013 UT 49, ¶ 33, and it apparently did exactly that. Thus, from all the facts and circumstances surrounding the breakdown of the Development Agreement, we determine that while the conclusion was not inevitable, there was at least a basis in the evidence for the jury to conclude that Blackmore had abandoned the contract. Accordingly, the trial court did not err in denying Blackmore's motion for judgment notwithstanding the verdict on the issue of abandonment.

## IV. Attorney Fees

¶38 Blackmore contends that the trial court erred by awarding attorney fees to Shadow Canyon and by failing to award attorney fees to Blackmore. In evaluating this issue, we consider, first, whether Shadow Canyon was entitled to attorney fees and, second, whether Blackmore was entitled to attorney fees.

A. The Trial Court Erred in Awarding Attorney Fees to Shadow Canyon.

¶39 In challenging the trial court's attorney fees award to Shadow Canyon, Blackmore argues that the trial court's decision

improperly relied on the conclusion that Shadow Canyon was the prevailing party. According to Blackmore, the Development Agreement authorized attorney fees to be assessed against a "defaulting party," not in favor of a "prevailing party," and because the jury expressly found that Blackmore did *not* breach the Development Agreement, Blackmore asserts that it could not be deemed a "defaulting party" under the attorney fees provision. Shadow Canyon responds that it was entitled to attorney fees because it was the prevailing party owing to the fact that it succeeded on Blackmore's contract claims.

¶40 "As a general rule, attorney fees may be awarded only when authorized by statute or contract." *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 23, 100 P.3d 1200. "If the legal right to attorney fees is established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms." *Jones v. Riche*, 2009 UT App 196, ¶ 2, 216 P.3d 357.

¶41 Utah Code section 78B-5-826 (the Reciprocal Attorney Fees Statute), on which the trial court relied in awarding fees to Shadow Canyon, provides that the "court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing . . . when the provisions of [that writing] . . . allow at least one party to recover attorney fees." Utah Code Ann. § 78B-5-826 (LexisNexis 2012). This statute typically "applies 'when a contract creates an unequal exposure to the risk of contractual liability for attorney fees, [and is applied] to ensure that both parties are subject to the attorney fee provision.'" *Jones*, 2009 UT App 196, ¶ 5 (alteration in original) (quoting *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 77, 201 P.3d 966) (additional internal quotation marks omitted). *But see Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶¶ 15–17, 285 P.3d 766 (explaining that the Reciprocal Attorney Fees Statute is not confined to contracts with unilateral fee provisions).

¶42   In *Jones v. Riche*, 2009 UT App 196, 216 P.3d 357, the contract at issue was similar to the Development Agreement in that it required the defaulting party to pay attorney fees. *Id.* ¶ 2. Despite this provision, the trial court in *Jones* applied the Reciprocal Attorney Fees Statute and awarded fees to the party it deemed to be the "prevailing party." *Id.* ¶ 4. This court reversed that decision, explaining that the "prevailing party" standard "is not the standard for awarding fees that the parties included in their contract," *id.* ¶ 7, and that the Reciprocal Attorney Fees Statute did not apply because the contract's "attorney fee provision cut both ways" in that "'neither party had a contractual advantage,'" *id.* ¶ 6 (quoting *Giusti*, 2009 UT 2, ¶ 77). Because the contract required whichever side that defaulted to pay for attorney fees, this court reasoned that the trial court erred because it "was required to strictly enforce the agreement's terms" and "was not at liberty to rely on the Reciprocal Attorney Fees statute . . . to contradict the agreement's terms." *Id.*

¶43   In this case, like *Jones*, the "prevailing party" standard "is not the standard for awarding fees that the parties included in their contract." *See id.* ¶ 7. Instead, the attorney fees provision in the Development Agreement states,

> Should any party *default* in any of the covenants or agreements herein contained, that *defaulting party* shall pay all costs and expenses, including reasonable attorney fees, which may arise or accrue from enforcing this Development Agreement, enforcing any covenant or term herein, or in pursuing any other remedy provided hereunder or by applicable law, whether such remedy is pursued by filing suit or otherwise.

(Emphases added.) This provision clearly provides that the party who "defaults" is liable for attorney fees. Accordingly, the trial court erred when it employed the Reciprocal Attorney Fees Statute to deem Shadow Canyon "the prevailing party" and to

contradict the Development Agreement's plain terms by awarding it attorney fees. We therefore vacate the trial court's award of attorney fees.[9]

B.     Blackmore Is Not Entitled to Attorney Fees.

¶44     Blackmore also contends that because the jury found that Shadow Canyon materially breached the Development Agreement, Shadow Canyon is the "defaulting party" who should be held liable for Blackmore's attorney fees under the Development Agreement. *See id.* ¶ 3 ("When a contract requires, as this one does, that the defaulting party pay attorney fees, 'the sole criterion for [a party] to obtain attorney fees . . . is to show default by the other contract party.'" (alteration and omission in original) (quoting *Foote v. Clark*, 962 P.2d 52, 54–55 (Utah 1998))). Shadow Canyon counters that Blackmore's abandonment meant that Blackmore had abandoned its rights to enforce the Development Agreement's provisions, including the attorney fees provision. Consequently, Shadow Canyon argues, it would be incongruous to allow Blackmore to recover attorney fees.

¶45     Under Utah law, "where 'it is found that there was an abandonment [of the contract], then [the] plaintiff's entitlement to attorney[] fees is rendered moot." *Eldridge v. Farnsworth*, 2007 UT App 243, ¶ 52, 166 P.3d 639 (alterations in original) (quoting *Forsyth v. Pendleton*, 617 P.2d 358, 362 (Utah 1980) (per curiam)). Thus, even assuming that Shadow Canyon was the "defaulting party" under the attorney fees provision in this case, Blackmore

---

9. Blackmore attempts to challenge the trial court's award of costs to Lindhardt. But because it has not separately developed and supported any argument on this issue, it has not demonstrated error in this regard. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885 (explaining that to demonstrate trial court error, an appellant's brief must contain reasoned analysis based on authority).

was not entitled to contractual attorney fees. Because Blackmore had abandoned the contract, the Development Agreement's attorney fees provision was no longer in force and Blackmore was not entitled to claim fees under it. *See id.* ¶¶ 51–52.[10]

CONCLUSION

¶46    Blackmore has not shown that Judge Shumate exceeded his discretion in recusing himself from this matter. Blackmore also has not demonstrated that Judge Stott erred in revisiting the 2008 Summary Judgment Order. In addition, we affirm the trial court's denial of Blackmore's motion for judgment notwithstanding the verdict on the issue of whether Blackmore had abandoned the contract. But because we conclude that neither side is entitled to attorney fees, we vacate the trial court's attorney fees award to Shadow Canyon.

––––––––––

10. Although both sides request attorney fees incurred on appeal, we do not award fees to any party, because neither side is entitled to attorney fees under the Development Agreement. *See Westmont Mirador LLC v. Shurtliff*, 2014 UT App 184, ¶ 14, 333 P.3d 369 (concluding that neither party was entitled to attorney fees in the trial court and declining to award either party attorney fees on appeal).