2024 UT App 78

# THE UTAH COURT OF APPEALS

BIG GAME FOREVER,
Appellant,
*v.*
ERIC S. PETERSON, THE UTAH INVESTIGATIVE JOURNALISM PROJECT,
UTAH DEPARTMENT OF NATURAL RESOURCES,
AND STATE RECORDS COMMITTEE,
Appellees.

Opinion
No. 20210792-CA
Filed May 23, 2024

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 200902471

Trinity Jordan and Paul L. Brusati,
Attorneys for Appellant

Jeffrey J. Hunt, David C. Reymann, and Sara Meg
Nielson, Attorneys for Appellees Eric S. Peterson and
The Utah Investigative Journalism Project

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and AMY J. OLIVER concurred.

ORME, Judge:

¶1　Eric S. Peterson, on behalf of the Utah Investigative Journalism Project (collectively, Peterson), made a records request for the expenditure reports of Big Game Forever (Big Game) relating to its contract work with the State. The Utah Department of Natural Resources (the Department) granted the request in part, providing the records with certain information redacted. In response to Peterson's subsequent challenge to the redaction, the State Records Committee (the Committee) reversed the Department's decision to redact the records. Big Game

subsequently sought judicial review of the Committee's reversal, and the parties filed cross-motions for summary judgment. The district court ultimately granted summary judgment in Peterson's favor and denied Big Game's motion for summary judgment.

¶2     Big Game then appealed to this court. Because Big Game's principal brief does not meaningfully challenge the district court's balancing-of-interests analysis under Utah Code section 63G-2-404(7)(a), which served as an independent alternative basis for the court's summary judgment rulings, we affirm.

BACKGROUND

¶3     In the words of Big Game, "Utah is home to world-class wildlife herds and a $2.4 billion outdoor and hunting industry." Also according to Big Game, "[t]he rapid growth of Canadian Gray Wolf populations and the resulting decline of key elk, moose, deer, and other wildlife populations in the Northern Rockies has been a significant conservation issue in the western United States." Based on this premise, Big Game has endeavored to remove the Canadian Gray Wolf from protections under the federal Endangered Species Act by working "with State and Federal agencies to pursue legal and legislative solutions to achieve legal and management authority over wolves to protect wildlife in the State of Utah." *See* Utah Code Ann. § 23A-15-102(10) (LexisNexis Supp. 2023) ("It is the policy of the state to legally advocate and facilitate the delisting of wolves in Utah under the Endangered Species Act and to return wolf management authority to the state.").[1] The State of Utah has supported Big Game's efforts to delist the Canadian Gray Wolf as a protected species by awarding it a grant of $100,000 in 2011 and

---

1. Because the applicable provisions of the Utah Code in effect at the relevant time do not differ in a way material to this appeal from those in the most recent printed version of the code, we cite that version for convenience.

by entering into two contracts with Big Game through the Department in 2012 and 2017 that collectively totaled $5.1 million.

¶4 Big Game has subcontracted with numerous vendors, and it claims to have dealt with two consistent problems: (1) "frequent death threats and harassment regarding the work it (and its vendors) performs" and (2) competitors' efforts to poach its subcontractors in an attempt to compete for future contracts. Thus, Big Game has taken, in its judgment, "all reasonable measures" to maintain and protect the confidentiality of its subcontractors' identities.

¶5 In 2013, referring to Big Game's first contract with the State, the Office of the Legislative Auditor General issued an audit report stating that "[t]he upfront payment, lack of accounting review, and lack of a current-year plan leads us to believe that the contract lacks sufficient safeguards" and, regarding the possibility of the comingling of state and private funds for lobbying efforts, "we cannot ensure that state funds were used appropriately." *See generally id.* § 63J-1-210(2) ("An agency to which money is appropriated by the Legislature may not expend any money to pay a contract lobbyist."). Based on this report, the Department indicated that "it had already required additional accounting data . . . and would pass along the recommendation to work with State Purchasing to address vendor comingling of funds without separate accounting of state funds to State Purchasing for consideration of future contracts."

¶6 In 2018, Big Game and the Department executed an addendum to the second contract, adding, as later summarized by the district court, the "requirement that Big Game provide expenditure reports that shall include accounting records detailing the billable hours of each contractor working under the contract during the billing period and shall be tied to one of the [contract's] objectives." But Big Game alleged in a declaration by its CEO that the Department agreed that any information contained in the reports "would remain protected." To that end,

the expenditure reports Big Game submitted under the addendum "contain[ed] a claim of business confidentiality to protect as trade secrets and commercially sensitive information the specific names and hours worked by Big Game's subcontractors."

¶7    In 2019, during the term of Big Game's second contract, Peterson made a records request for copies of Big Game's expenditure reports under Utah's Government Records Access and Management Act (GRAMA), *id.* §§ 63G-2-101 to -901 (2019 & Supp. 2023). The Department partially denied Peterson's request, providing him with the expenditure reports but redacting the names of nine of Big Game's subcontractors. The Department explained the redactions by stating, "After consulting with our legal team and [Big Game,] we have determined that [subcontractor names] are protected records" under Utah Code section 63G-2-305.

¶8    Peterson appealed to the Department's Chief Administrative Officer for GRAMA appeals, who upheld the decision to redact the subcontractors' identities on the ground that Big Game's "claim appears to fit the confidentiality provisions referenced in GRAMA." Peterson challenged the Chief Administrative Officer's decision before the Committee, which reversed the decision. The Committee rejected Big Game's argument that the identity of its subcontractors constituted trade secrets or commercial information under Utah Code section 63G-2-305, and it also determined that this was "information that was normally public pursuant to" section 63G-2-301(3)(c). The Committee was also persuaded "that there is a public interest in the public obtaining access to information regarding the spending of public funds."

¶9    Big Game then petitioned the district court for review of the Committee's decision. *See generally id.* § 63G-2-404 (Supp. 2023) (detailing the process for pursuing a petition for judicial review of an order or decision of the Committee). Big Game and

Peterson eventually filed cross-motions for summary judgment regarding whether the subcontractors' identities were trade secrets and commercially sensitive information and whether the public interest in receiving the information outweighed the interest in restricting it under section 63G-2-404(7)(a).

¶10    The district court granted Peterson's motion and denied Big Game's motion. In its written decision, the court made three distinct rulings: (1) "Big Game has not demonstrated that the names of its nine subcontractors on the expenditure reports are trade secrets"; (2) "Big Game has not demonstrated that disclosure of the entire list of the nine subcontractors' names 'could reasonably be expected to result in unfair competitive injury to [Big Game] or would impair the ability of the governmental entity to obtain necessary information in the future' as required to be protected as commercial information" under section 63G-2-305(2); and (3) "even if the subcontractor list is properly classified as protected, the interest favoring access is greater than or equal to the interest favoring restriction of access." The court consequently concluded that the reports should be released in their unredacted form.

¶11    Big Game appeals.

## ISSUE AND STANDARD OF REVIEW

¶12    Big Game challenges the district court's grant of summary judgment in Peterson's favor, arguing that the court erred in concluding that the subcontractors' names were neither trade secrets nor commercially sensitive information. "We review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness" while "view[ing] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 13, 525 P.3d 100 (quotation simplified). But we do not apply this familiar protocol here

because an important appellate doctrine carries the day and requires affirmance. Specifically, "we will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only [some] of those grounds." *Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12 (quotation simplified).

ANALYSIS

¶13    By enacting GRAMA, our Legislature balanced "the public's [constitutional] right of access to information concerning the conduct of the public's business," Utah Code Ann. § 63G-2-102(1)(a) (LexisNexis 2019), against the competing "public policy interest in allowing a government to restrict access to certain records . . . for the public good," *id.* § 63G-2-102(2). Under GRAMA's framework, "[a] record is public unless otherwise expressly provided by statute," *id.* § 63G-2-201(2) (Supp. 2023), but records "properly classified" into certain categories—including, as relevant here, trade secrets and commercial information—are statutorily "protected" from disclosure under certain circumstances, *id.* § 63G-2-305(1), (2).

¶14    Our Legislature also intended, among other things, to "favor public access when . . . countervailing interests are of equal weight." *Id.* § 63G-2-102(3)(e) (2019). To that end, GRAMA directs that when considering a petition for judicial review, the district court "may, upon consideration and weighing of the various interests and public policies pertinent to the classification and disclosure or nondisclosure, order the disclosure of information properly classified as private, controlled, or protected if the interest favoring access is greater than or equal to the interest favoring restriction of access." *Id.* § 63G-2-404(7)(a) (Supp. 2023).

¶15    Here, in addition to concluding that the subcontractors' identities were not protected trade secrets or commercial information, the district court alternatively affirmed the

Committee's decision based on the section 404(7)(a) balancing test.[2] In applying this balancing test, the court weighed Big Game's interest in protecting against unfair competition and its interest in protecting the subcontractors' safety against the public's interest in knowing how public funds are spent. The court stated that Big Game made only conclusory statements that

---

2. In its reply brief, Big Game asserts that the district court did not engage in a section 404(7)(a) balancing because "[t]hat statute does not appear anywhere in the district court's order, much less in the balance of interests section." Although the court did not invoke the section by name, it undisputably engaged in a balancing of the competing parties' interests, ultimately holding that Peterson's interest—and the public's more generally—weighed more heavily. In so doing, the court quoted section 404(7)(a) verbatim when it concluded that "the interest favoring access is greater than or equal to the interest favoring restriction of access." *See* Utah Code Ann. § 63G-2-404(7)(a) (LexisNexis Supp. 2023). Peterson also expressly argued in his motion for summary judgment that section 404(7)(a)'s balancing test weighed in his favor, so the statutory basis for the court's ruling should have come as no surprise to Big Game.

And contrary to Big Game's contention, in conducting the balancing test, the district court clearly did more than merely apply the second element of the commercial information inquiry, which requires that "the person submitting the information has a greater interest in prohibiting access than the public in obtaining access." *Id.* § 63G-2-305(2)(b). As an initial matter, the court had already concluded in a prior section of its order that the subcontractors' identities did not constitute commercial information. But more importantly, after engaging in the balancing of interests, the court held, with our emphasis, that "*even if the subcontractor list is properly classified as protected*, the interest favoring access is greater than or equal to the interest favoring restriction of access." For these reasons, section 404(7)(a) was the sole possible basis for the court's balancing ruling.

its subcontractors had "historically been targeted by extremist animal rights groups" without providing "any specifics as to the conduct by animal rights groups." Conversely, the court determined that "the public's interest in obtaining access to the information regarding who is receiving public funds, and what they are doing to perform the public contract, is high" and that "[t]he public has a great interest in the accountability and transparency of the expenditure of millions of dollars under the public contracts with Big Game." After balancing these considerations, the court concluded that "even if the subcontractor list is properly classified as protected, the interest favoring access is greater than or equal to the interest favoring restriction of access."

¶16   In challenging the district court's summary judgment rulings, Big Game asserts in its principal brief that the court "gave two overarching reasons for its ruling: (1) the names are not trade secrets; [and] (2) the names are not commercially-sensitive information" and, in this context, "Big Game did not meet its burden to show that it has a greater interest in prohibiting access than the public [has] in obtaining access." *See supra* note 2. Big Game's challenge to each of those two conclusions contains no discussion of the court's section 404(7)(a) balancing of interests, which formed a third and alternative independent ground for the court's decision. Because of this, we do not reach the merits of Big Game's arguments on those two reasons and instead are constrained to affirm the district court's summary judgment in Peterson's favor.

¶17   "Our rules of appellate procedure place the burden on the appellant to identify and brief any asserted grounds for reversal of the decision below." *Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12. Accordingly, "an appellant's failure to challenge a final order of the lower court places that final order beyond the reach of further review," and "we will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only [some] of those grounds." *Id.* (quotation

simplified). In such cases, we are left "without a basis for anything other than an affirmance of the district court's" ruling. *Id.* ¶ 14. As described above, this is exactly what happened in the current appeal. Thus, we must affirm the district court's summary judgment rulings "without endorsing the merits of the district court's" decision. *Id.* ¶ 15.

¶18 Big Game resists this conclusion. In its reply brief, it contends that it challenged any balancing of interests under section 404(7)(a) by providing argument on the second element of the commercial information analysis, which similarly requires a showing that "the person submitting the information has a greater interest in prohibiting access than the public in obtaining access." Utah Code Ann. § 63G-2-305(2)(b) (LexisNexis Supp. 2023). Big Game asserts that this second element "requires the same balance of interests" as that found in section 404(7)(a). *See id.* § 63G-2-404(7)(a) (stating that otherwise protected information may nonetheless be disclosed "if the interest favoring access is greater than or equal to the interest favoring restriction of access"). But even if we were to accept Big Game's argument that the second element of section 305(2)(b) parallels the balancing of interests under section 404(7)(a), Big Game has nonetheless failed to satisfy its appellate burden of persuasion on this issue.

¶19 Rule 24 of the Utah Rules of Appellate Procedure requires that an appellant's "argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). In other words, "appellants carry the burden to persuade a reviewing court through reasoned, supported argument that the district court committed harmful, reversible error—a burden that necessarily requires the appellant to address the reasoning and basis of the district court's ruling and to explain why that court got it wrong." *Cottam v. IHC Health Services Inc.*, 2024 UT App 19, ¶ 15, 544 P.3d 1051 (quotation simplified). An appellant who "does not meaningfully engage with the district court's reasoning . . . falls short of demonstrating any error on the part of the district

court." *Federated Cap. Corp. v. Shaw*, 2018 UT App 120, ¶ 20, 428 P.3d 12 (quotation simplified). *See also Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375 (stating that an appellant who "fails to attack the district court's reasons" for its ruling "cannot demonstrate that the district court erred"), *cert. denied*, 247 P.3d 774 (Utah 2011).

¶20 Big Game's argument on balancing in the commercial-information context is limited to the assertions that it "derives economic value from keeping the names of its subcontractors confidential" and that "[c]onsidering the consequences to Big Game if these names were disclosed, Big Game's interest in preventing disclosure outweighs the public's interest in learning them." In the context of challenging the district court's section 404(7)(a) balancing of interests, these conclusory statements do not meaningfully engage with the district court's reasoning and are thus insufficient to carry Big Game's burden of persuasion on appeal. *See State v. Nelson*, 2015 UT 62, ¶ 40, 355 P.3d 1031 ("Bald assertions and platitudes are not enough to satisfy an appellant's burden to provide an adequate argument on appeal.").

## CONCLUSION

¶21 Big Game raised no appellate challenge to the district court's balancing of interests under Utah Code section 63G-2-404(7)(a), which provides an alternative ground for affirming the Committee's decision. Accordingly, we affirm the district court's summary judgment in Peterson's favor without considering the other rulings of the district court that were robustly challenged by Big Game on appeal—namely that the subcontractors' names were not trade secrets or commercial information.

———————