**2025 UT App 128**

## THE UTAH COURT OF APPEALS

GEORGE FLEMING,
Appellant and Cross-appellee,
*v.*
JIM DULLANTY,
Appellee and Cross-appellant.

Opinion
No. 20230800-CA
Filed August 21, 2025

Third District Court, Silver Summit Department
The Honorable Kent R. Holmberg
The Honorable Richard E. Mrazik
No. 170500334

Troy L. Booher and Beth E. Kennedy,
Attorneys for Appellant and Cross-appellee

John J. Nielsen and John Morris,
Attorneys for Appellee and Cross-appellant

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

ORME, Judge:

¶1    Highly dissatisfied with the renovation of his two condominium units, for which his homeowners association was responsible, George Fleming sued the association's president, Jim Dullanty, in Dullanty's personal capacity. The procedural history of this lawsuit is rather lengthy and complicated. The suit was ultimately resolved when the district court granted summary judgment in Dullanty's favor, resulting in dismissal of Fleming's second amended complaint, which had raised a claim for gross negligence. The court later awarded Dullanty attorney fees

incurred in securing dismissal of Fleming's original complaint and first amended complaint—which the court determined raised claims for breach of fiduciary duty and not gross negligence—but the court declined to award Dullanty attorney fees related to securing summary judgment on the second amended complaint.

¶2     On appeal, Fleming challenges the court's grant of summary judgment and its award of attorney fees to Dullanty. Dullanty cross-appeals, arguing he is also entitled to an award of attorney fees related to litigation of the second amended complaint. Because the court's attorney fees award was based solely on a misinterpretation of an order entered by a prior judge in this case, we reverse the award of attorney fees in Dullanty's favor. We otherwise affirm the district court's rulings.

BACKGROUND[1]

¶3     Fleming has an ownership interest in two condominium units at the Grand Summit Hotel (the Hotel), located in Park City, Utah. The units are governed by the Hotel's homeowners association (the HOA). The HOA's executive board (the Board) consists of seven volunteer members: five are elected by the owners and two are appointed by the Hotel. During all times relevant to this case, Dullanty served as the president of the Board. As such, he was responsible for "implementing the decisions of the [Board] and, in that capacity," he was required to "direct, supervise, coordinate, and have general control over the affairs of the [HOA] and the [Board]."

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

¶4 Fleming's "ownership" of his two condominium units differs from the common understanding of the term. Under the Hotel's business model, each unit is divided into four quarter-shares, each of which confers "the exclusive right of possession of the [unit] during a Use Period." Fleming owns all four available quarter-shares for each of his two units. In addition to the four available quarter-shares, there is also a "Service Period" for each unit, during which time the HOA may perform its maintenance duties. Importantly, the HOA has "the right to modify, alter, remove or improve portions of the [units], including without limitation any equipment, fixtures and appurtenances, when in the . . . Board's judgment it is necessary or desirable to do so."

¶5 In 2016, the HOA began an extensive renovation of the Hotel. A three-member renovation committee was created to oversee the project. Dullanty, who was the only member of the Board to serve on this committee, appointed himself as its head. In that capacity, Dullanty recommended to the Board that the HOA engage a New Jersey-based company as general contractor (General Contractor) to complete the renovation project. The Board unanimously voted to hire General Contractor.

¶6 The contract between the HOA and General Contractor required General Contractor to abide by governing Utah statutes, codes, ordinances, rules, and regulations. But General Contractor was not licensed in Utah,[2] had never previously completed a construction project in Utah, and had never completed a project of this magnitude in the Mountain West region. General Contractor did not obtain a Utah license until six months into the project. General Contractor hired subcontractors who were also unlicensed and inexperienced. And the initial project manager

---

2. There is evidence in the record suggesting that General Contractor had at one point been licensed in Utah but that the license had lapsed.

Dullanty eventually hired months after the project had already begun had no experience with construction projects.

¶7 The renovation project did not go smoothly. General Contractor was cited for being unlicensed, for hiring unlicensed workers, and for not having a building permit. Additionally, the Summit County Building Department and local fire department found numerous code violations. Many owners, including Fleming, complained about the quality of General Contractor's work. Two members of the Board resigned during the course of the project, citing Dullanty's conduct and issues with the renovation as the reason for their resignations.

¶8 Fleming was highly dissatisfied with the work done on his two units. Among other things, he complained that the plumbing had been improperly installed and was partially clogged with grout; that there were missing blackout shades; that some outlets did not work; that the wooden doors had been incorrectly cut and some were damaged; that a refrigerator door was damaged and the appliances generally were of lower quality than what was paid for; that the paint job was of poor quality throughout the units; that there were stains on the carpet and tile; and that the jacuzzi in one of his units had been removed.

¶9 In 2017, Fleming, who is an attorney licensed in Texas and Washington D.C., sued Dullanty in his personal capacity. In the original complaint, Fleming brought two causes of action. First, he alleged that Dullanty had violated, among other statutes, the Utah Revised Nonprofit Corporation Act (the RNCA) for not providing all the documents Fleming requested related to the renovation project. Second, he alleged a cause of action titled "Willful Misconduct and Gross Negligence." For this claim, he asserted that Dullanty, as president of the Board, "owes a fiduciary duty to unit owners of the [HOA] to act in their best interests"; that "[i]n this capacity, Dullanty must act reasonably for the benefit of unit owners"; and that his failure to do so

constituted "willful misconduct and gross negligence under the law."

¶10 The first cause of action was soon dismissed, following which Fleming filed his first amended complaint raising only a claim for "Willful Misconduct and/or Gross Negligence." The complaint reiterated that Dullanty, as president of the Board, "owes a fiduciary duty to unit owners . . . to act in their best interests" and that "[i]n this capacity, Dullanty must act reasonably for the benefit of unit owners." Fleming asserted that the following actions, among others, amounted to willful misconduct or gross negligence: hiring General Contractor, which was unlicensed in Utah; allowing General Contractor to begin work on the project without a valid Utah license or building permit; permitting General Contractor to continue working after "repeated and known violations of Utah law"; and purchasing low-quality furnishings.

¶11 Dullanty moved to dismiss the first amended complaint, arguing, in relevant part, that Fleming lacked standing to bring an action against him. Dullanty asserted that Fleming's "claim against [him] in his capacity as President of the Board is in reality an action for breach of fiduciary duty," which must be brought derivatively and not in a direct action by an individual unless the individual can show that he was injured in a manner distinct from any injury suffered by the corporation (in this case, the HOA) more generally.[3] The district court agreed, holding that it was

---

3. A derivative action is one that "seek[s] to enforce any right which belongs to the corporation." *Aurora Credit Services, Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273, 1280 (Utah 1998) (quotation simplified). "Actions alleging mismanagement, breach of fiduciary duties, and appropriation or waste of corporate opportunities and assets generally belong to the corporation," and "even though wrongdoing or fraud of corporate officers may

(continued…)

undisputed that Fleming's "sole cause of action is based on allegations of tort liability" and thus, "to articulate a claim, [Fleming] must identify a duty running from [Dullanty] to [Fleming] that has been breached." But, the court found, the only duty the first amended complaint identified was "a fiduciary duty that flows from" Dullanty, in his capacity as president of the Board, to the HOA's members. The court accordingly concluded that Fleming's claim against Dullanty was "in reality an action for breach of [Dullanty's] fiduciary duty to [the HOA], regardless of how it is labeled in the First Amended Complaint." And because Fleming had failed to allege "any injury or harm distinct from all other [HOA] members," the court dismissed the first amended complaint for lack of standing.

¶12 Following the dismissal, Dullanty filed his first motion for attorney fees, arguing, in relevant part, that he was entitled to an award as the prevailing party on Fleming's breach of fiduciary duty claim. Fleming then filed a motion to reconsider, contending that the first amended complaint did not raise a claim for breach of fiduciary duty. He asserted that the complaint instead raised only a claim for willful misconduct or gross negligence, and that "merely noting the existence of" Dullanty's fiduciary duty to the HOA's members "does not assert a breach of fiduciary [duty] claim."

¶13 The district court agreed with Fleming. In a memorandum decision dated January 3, 2019 (the January 2019 order), the court stated that although the first amended complaint "refers to [Dullanty] owing a fiduciary duty," the court was "no longer

_____

indirectly injure shareholders, shareholders generally cannot sue directly for those injuries." *Id.* (quotation simplified). But an individual shareholder may bring a direct action against corporate officers "if the injury is one to the plaintiff . . . individually, and not to the corporation." *Id.* (quotation simplified).

convinced that [Fleming's] claim should be cast as a breach of fiduciary duty claim" because the court could "envision situations where a board member could face personal liability" under a willful misconduct or gross negligence claim so long as the plaintiff could allege "breach of a duty separate and apart from a fiduciary duty." Thus, the court concluded that "in construing [Fleming's] pleadings liberally, it appears that [his] consistent intent has been to advance a cause of action for willful misconduct and gross negligence, resulting in individual damages." The court reiterated that the first amended complaint alleged "only a breach of fiduciary duty" but that the motion to reconsider "alludes to various other duties that [Dullanty] allegedly breached." Accordingly, "[i]n the interest of justice," the court granted Fleming leave to amend his complaint once more "to allege each element of gross negligence/willful misconduct, including identifying a duty or duties owed by [Dullanty] which have allegedly been breached and which can be brought in [Fleming's] individual capacity as opposed to derivatively." As for Dullanty's requested attorney fees, the court ruled that the motion was "mooted by the Court's rulings herein."

¶14 Fleming subsequently filed a second amended complaint that made no mention of a fiduciary duty but alleged that Dullanty's actions constituted gross negligence or willful misconduct. He asserted three bases for this cause of action. First, he asserted a statutory basis (the statutory claim) under Utah Code section 16-6a-822(6), which provides,

> A director or officer is not liable to the nonprofit corporation, its members, or any conservator or receiver, or any assignee or successor-in-interest of the nonprofit corporation or member, for any action taken, or any failure to take any action, as an officer or director, as the case may be, unless:

> (a) the director or officer has breached or failed to perform the duties of the office as set forth in this section; and
>
> (b) the breach or failure to perform constitutes:
>
>> (i) willful misconduct; or
>>
>> . . .
>>
>> (iii) gross negligence.

Utah Code Ann. § 16-6a-822(6) (LexisNexis 2022).[4] Second, Fleming asserted a contractual claim (the breach of contract claim) under the HOA's governing declaration, which exempts members of the Board from liability for performance of their duties "except for the Board Members' own willful misconduct or gross negligence." Third, he asserted a common law basis for the claim (the common law claim).

¶15 Dullanty filed another motion to dismiss, arguing that Fleming could not sue "directly for the damage to his unit[s]," because Dullanty "does not owe a duty to" Fleming. The court granted the motion in part. The court's order, which was prepared by Dullanty's counsel and approved as to form by Fleming, characterized the second amended complaint as bringing a statutory claim for violating section 16-6a-822(6), a breach of contract claim for violating the HOA's governing declaration, and a common law claim for breach of fiduciary duty. The court dismissed the statutory claim on the ground that it was a derivative claim, and Fleming had not alleged individualized

---

4. Because the applicable provisions of the Utah Code in effect at the relevant time do not differ from those currently in effect in any way material to this appeal, we cite the current version of the code for convenience.

harm. The court also dismissed the common law claim on the ground that "there is no common law tort action for the types of fiduciary duty violations or other violations of duty claimed by" Fleming. But the court did not dismiss the breach of contract claim.[5]

¶16    Dullanty later filed a motion for summary judgment on the remaining breach of contract claim, which the court granted, leading to the court's dismissal of the second amended complaint with prejudice. That summary judgment order, which was prepared by Dullanty's counsel and approved as to form by Fleming, also stated that one of the claims Fleming brought in the second amended complaint was for breach of fiduciary duty.

¶17    Fleming subsequently filed a motion to reconsider both the dismissal of the statutory claim and the later grant of summary judgment on the breach of contract claim. Regarding the dismissal of the statutory claim, Fleming asserted that the damage he identified "is unique to his units and independent from the separate, additional harm that Mr. Dullanty caused the HOA as a whole and the distinct, individualized harms he caused various other owners." Fleming pointed to the "lengthy list of individual harm he suffered" contained in the second amended complaint, such as "missing blackout shades, damaged refrigerator door, glue spilled on carpeting and tiles, doors unable to shut, paint spatter on tiles, improperly installed piping, non-working outlets, and the removal of his Jacuzzi."

¶18    The district court was persuaded that the second amended complaint gave "fair notice that [Fleming] alleges that he incurred individualized harm," and it accordingly reversed the dismissal

_____

5. Following the court's partial grant of the motion to dismiss, this case was reassigned from Judge Kent R. Holmberg to Judge Richard E. Mrazik, who entered all subsequent rulings in this case.

of the statutory claim. But the court did not reverse its grant of summary judgment on the breach of contract claim. Thus, after this ruling, Fleming's "sole remaining claim" was the statutory claim that Dullanty "violated Utah Code [section] 16-6a-822 by purportedly breaching a duty set forth therein."

¶19    Dullanty then filed a second motion for summary judgment, arguing that there was insufficient evidence that he had engaged in willful misconduct or gross negligence as required by section 16-6a-822. His nearly 200-page memorandum contained 441 statements of fact and had over 2,200 pages of exhibits attached to it. To name but a few, Dullanty provided evidence that the renovation committee interviewed two other general contractors before deciding on General Contractor; that General Contractor was contractually obligated to fix any code violations and failure to do so would result in the HOA collecting a $6 million bond; that owners could submit "punch lists" to notify General Contractor of issues with their units so that they could be fixed; that once the Board discovered that General Contractor was unlicensed and had not obtained the necessary permits for the renovation project, it gave General Contractor a deadline by which to obtain the license and permits before resuming work and that General Contractor complied with these requirements; and that the Board chose not to terminate General Contractor because it "appear[ed] to be making a substantial effort to rectify the mistakes (management and quality)" it had made and it had hired a new project manager and two superintendents.

¶20    In opposing the motion, Fleming proffered the deposition testimony from one of the two board members who had resigned during the renovation project (Board Member) and an affidavit from an expert (Expert) who owned a construction company with significant experience in large construction jobs and who had previously worked in the Utah Department of Professional Licensing.

¶21 Board Member, who in his professional capacity "oversaw the financial aspects of a number of hotel remodels," testified that Dullanty "pretty much call[ed] the shots" on the remodel project. He also stated that Dullanty made several grossly negligent decisions that can be divided into three general categories. First, Board Member testified that Dullanty was grossly negligent in his hiring decisions. He hired General Contractor, which was not licensed in Utah and did not apply for a Utah license or a building permit until six months after the project had already begun. Dullanty also later hired an unqualified project manager whose prior experience included working at the front desk of a hotel and some design work. Second, even after problems arose and after General Contractor received several citations for code violations, Dullanty did not exercise the HOA's contractual right to terminate General Contractor. Third, Dullanty did not disclose important information to the Board and minimized problems that would have otherwise caused the Board to block his decision to hire General Contractor and which resulted in "exorbitant" costs.

¶22 Expert submitted an affidavit in which, based on his "background, experience and expertise," he concluded that Dullanty "was grossly negligent in the manner in which he conducted himself" during the renovation project. Specifically, Expert opined that Dullanty was grossly negligent for "not properly evaluat[ing]" General Contractor prior to hiring it to complete the project. Expert stated that even a cursory search would have revealed that General Contractor was based out of New Jersey and was not licensed in Utah. Expert further opined that the negligent hiring of General Contractor resulted in (1) General Contractor's unfamiliarity with "Utah's licensure requirements and the Summit County Building Inspector's building requirements," (2) the need to transport workers from New Jersey to Utah and to house them, and (3) "difficulty accessing skilled local labor for this job." Expert also concluded that Dullanty was grossly negligent for not exercising the

contractual right to terminate General Contractor after Dullanty became aware that General Contractor was not licensed in Utah and after seeing "the substandard work that was being performed."

¶23　The district court granted summary judgment in Dullanty's favor and dismissed the second amended complaint with prejudice. The court ruled that although Fleming had raised a genuine issue of material fact regarding whether Dullanty "breached or failed to perform the duties of his office under [section] 16-6a-822 of the Utah Code," that was "not enough" because Fleming had not "also put competent evidence in the record raising a genuine issue of material fact as to whether" the breach or failure to perform those duties "constituted willful misconduct . . . or gross negligence." The court stated that while Board Member made "general statements regarding a lack of information shared with the board," Dullanty "being in charge," and Dullanty's "lack of due diligence or . . . failure to perform certain duties," "those general statements" were insufficient to create a genuine issue of material fact "when faced with the undisputed facts contained in" Dullanty's lengthy summary judgment motion. And Board Member's "more specific statements" about Dullanty's actions were "not material facts because they are not relevant to the damages claimed by Mr. Fleming in this case." As for Expert's affidavit, although the court acknowledged that his expert opinion raised issues of material fact regarding whether Dullanty breached his duties under section 16-6a-822, the court held that the affidavit was "not relevant to whether those breaches constituted gross negligence" because that determination "is not the proper subject of expert testimony."

¶24　Following this dismissal of the second amended complaint, Dullanty filed another motion seeking attorney fees, arguing that he was entitled to attorney fees as the prevailing party on Fleming's breach of fiduciary duty claim, under Utah's bad faith

statute, and under the RNCA. In opposing the motion, Fleming argued, among other things, that he never raised a fiduciary duty claim in any of his complaints.

¶25   The district court partially granted Dullanty's motion for attorney fees. Specifically, the court ruled that Dullanty was entitled to attorney fees as the prevailing party on the breach of fiduciary duty claim raised in the original complaint and in the first amended complaint (collectively, the earlier complaints). In so ruling, the court acknowledged that two of its prior orders erroneously stated that the second amended complaint raised a common-law claim for breach of fiduciary duty. Nevertheless, the court concluded that Fleming "explicitly pled a claim for breach of fiduciary duty" in the earlier complaints. The court (Judge Mrazik) stated that the court (Judge Holmberg) had previously "recognized this fact" in the January 2019 order when granting Fleming leave to amend his complaint for a second time, quoting as part of its oral ruling the order's statement that the first amended complaint alleged "only a breach of fiduciary duty." And because the fiduciary duty claim had been successfully dismissed, the court ruled that Dullanty was entitled to an award of attorney fees and costs totaling $248,669.75.

¶26   But the court denied Dullanty's request for attorney fees incurred after the filing of the second amended complaint, concluding that this complaint did not raise a breach of fiduciary duty claim and that attorney fees were not otherwise warranted under either the bad faith statute or the RNCA. Specifically, regarding the bad faith statute, the court held that the second amended complaint was neither meritless nor brought in bad faith. And as for the RNCA, the court held that the second amended complaint did not raise a derivative action because it raised "a claim for individual damages peculiar to [Fleming] and suffered by him uniquely."

¶27   Fleming appeals, and Dullanty cross-appeals.

ISSUES AND STANDARDS OF REVIEW

¶28   Fleming raises two main issues on appeal. We first address his argument that the district court erred in granting summary judgment in Dullanty's favor on the statutory claim for gross negligence. "Appellate courts review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness, viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 14, 423 P.3d 1150 (quotation simplified).

¶29   Fleming also challenges the district court's award of attorney fees, arguing that the court misconstrued the earlier complaints as raising a claim for breach of fiduciary duty. The parties agree that this presents a question of law reviewed for correctness.[6]

¶30   Relatedly, on cross-appeal, Dullanty raises two challenges to the district court's denial of his request for attorney fees incurred after the filing of the second amended complaint. First, he argues that the court erred in determining that he was not entitled to attorney fees under the bad faith statute. "We review a trial court's grant [or denial] of attorney fees under the bad faith statute as a mixed question of law and fact." *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 24, 507 P.3d 357 (quotation simplified). Attorney fees are warranted under the bad faith statute when a party can show that "an action or defense is both (1) without merit, and (2) not brought or asserted in good faith." *Id.* (quotation simplified). "The 'without merit' determination is a

---

6. Fleming also argues that only plaintiffs—and not defendants—are entitled to recover attorney fees in breach of fiduciary duty actions. Because we reverse the attorney fees award based on the merits of his first argument regarding those fees, we do not address his second argument.

question of law, and therefore we review it for correctness." *Id.* (quotation simplified). "A finding of bad faith is a question of fact and is reviewed by this court under the clearly erroneous standard," and we typically afford "a substantial measure of discretion" to the trial court's determination. *Id.* (quotation simplified).

¶31 Dullanty also argues that the district court erred in concluding that he was not entitled to attorney fees under the RNCA on the flawed rationale that the second amended complaint did not raise a derivative action. Generally, "whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Thorp v. Charlwood*, 2021 UT App 118, ¶ 17, 501 P.3d 1166 (quotation simplified), *cert. denied*, 509 P.3d 198 (Utah 2022).

## ANALYSIS

### I. Summary Judgment

¶32 "Gross negligence is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result." *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 35, 423 P.3d 1150 (quotation simplified). It "differs from ordinary negligence only in degree, and not in kind. In other words, a grossly negligent act is still a negligent act." *Cunningham v. Weber County*, 2022 UT 8, ¶ 31, 506 P.3d 575 (quotation simplified).

¶33 A moving party is entitled to summary judgment if the "party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). Where plaintiffs bear the burden of production at trial, defendants are entitled to summary judgment upon a showing "that the plaintiff has no legally sufficient

evidentiary basis" for their claims. *Salo v. Tyler*, 2018 UT 7, ¶¶ 30-31, 417 P.3d 581. And although questions regarding breach of a duty are ordinarily factual matters reserved for the factfinder, *see Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 14, 566 P.3d 777, "even questions of fact may be decided as a matter of law at the summary judgment stage," so long as the evidence "is so one-sided that a reasonable factfinder could reach but one conclusion," *Hall v. Springville City*, 2025 UT App 115, ¶ 44 (quotation simplified). Accordingly, when a gross negligence claim is at issue on summary judgment, "[t]he question for the district court is whether reasonable minds could not differ as to whether the defendant was grossly negligent under the circumstances. If they could not differ, then summary judgment is appropriate[.]" *Penunuri*, 2017 UT 54, ¶ 34. Thus, for a gross negligence claim to survive summary judgment on the breach of duty element of the claim,[7] a plaintiff "must show more than a breach of the standard of care." *Id.* ¶ 38. Rather, "the plaintiff must point to evidence that the defendant's conduct exposed the plaintiff to a significantly elevated level of risk." *Id.*

¶34 In granting summary judgment, the district court ruled that although Fleming had raised a genuine issue of material fact regarding whether Dullanty had "breached or failed to perform the duties of his office under" Utah Code section 16-6a-822(6)(a), Fleming had not "also put competent evidence in the record raising a genuine issue of material fact as to whether" the breach or failure to perform those duties constituted gross negligence, as required by section 16-6a-822(6)(b). The court stated that evidence

---

7. The elements of a negligence claim are "(1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff." *Gables at Sterling Village Homeowners Ass'n v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 55, 417 P.3d 95 (quotation simplified).

of Dullanty's lack of due diligence, his failure to perform certain duties, and his failure to disclose certain information to the Board was insufficient to create a genuine issue of material fact regarding gross negligence "when faced with the undisputed facts contained in" Dullanty's lengthy summary judgment motion.[8]

¶35   Fleming contends that his evidence was sufficient to preclude summary judgment on the gross negligence claim. Specifically, he points to the evidence he provided of facts that he asserts amount to gross negligence:

- Dullanty's failure to properly evaluate General Contractor prior to hiring it, including not realizing it was not licensed to work in Utah and had never previously performed a job in Utah;

- Dullanty's failure to consider the logistical difficulties and costs associated with transporting and lodging out-of-state workers in Utah;

- Dullanty's failure to consider in-state general contractors prior to making his hiring decision;

---

8. The court also discounted Board Member's "more specific statements" about some of Dullanty's other actions, concluding they were "not material facts because they are not relevant to the damages claimed by Mr. Fleming in this case." And the court did not consider Expert's conclusions that Dullanty was grossly negligent, because the determination of whether a breach constituted gross negligence "is not the proper subject of expert testimony." Fleming has not meaningfully challenged either of these conclusions on appeal.

- Dullanty's decision to hire "an unqualified project manager";

- Dullanty's decision not to terminate General Contractor's contract with the HOA after "dozens, if not hundreds," of owners brought problems related to the renovation project to his attention and after having learned that General Contractor had violated Utah law, had received numerous citations for code violations, and had failed building inspections; and

- Dullanty working unilaterally and hiding information from the Board, including spending large sums of money that inflated the cost of the renovation project without Board approval.

¶36 Fleming contends that the court erred in ruling that although the evidence supporting these facts was sufficient to show a genuine issue of material fact as to whether Dullanty acted with ordinary negligence, it was nonetheless insufficient to show that his actions constituted gross negligence. Fleming asserts that "[t]he line between breaching his duties and gross negligence could not be properly drawn on summary judgment." This is incorrect. As explained above, to withstand summary judgment on a gross negligence claim, the evidence "must show more than a breach of the standard of care." *Penunuri*, 2017 UT 54, ¶ 38. Thus, the court did not err when it concluded, based on its determination that Fleming had shown a possible breach of duty that did not rise to the level of gross negligence, that summary judgment was appropriate.

¶37 As for the court's reference to "undisputed facts" in Dullanty's summary judgment motion, Fleming first notes that the court did not specifically identify any undisputed facts. But in any event, he asserts that "they showed, at most, that Dullanty did some things that were not grossly negligent" but "[n]one of

them prove that he was *not* grossly negligent." But "gross negligence is the failure to observe *even slight care*," showing "utter indifference to the consequences that may result." *Id.* ¶ 35 (emphasis added; quotation otherwise simplified). Here, certain undisputed facts regarding Dullanty's exercise of care while overseeing the renovation project both in his capacity as a member of the renovation committee and as the president of the Board preclude a determination of gross negligence. For example, Dullanty provided evidence that the Board chose not to terminate General Contractor because it had made "a substantial effort to rectify the mistakes (management and quality)" and it had hired a new project manager and two superintendents going forward. Dullanty also provided evidence that the renovation committee interviewed two other general contractors prior to hiring General Contractor; that as soon as General Contractor's lack of a Utah license and lack of permitting came to the Board's attention, the Board required General Contractor to speedily rectify those deficiencies; that a $6 million bond ensured that General Contractor would fix any code violations; and that unit owners could submit "punch lists" of issues with their units so that General Contractor could remedy them.

¶38     In light of this undisputed evidence, "reasonable minds could not differ" that, given the circumstances, Dullanty observed, at the very least, "slight care" while overseeing the renovation project.[9] *Id.* ¶¶ 34–35 (quotation simplified). The court

---

9. Fleming also contends that Dullanty's evidence contradicted his evidence, thereby precluding summary judgment. But Dullanty's evidence recounted above does not contradict Fleming's evidence, rather it fills in the gaps and provides additional context.

therefore did not err in granting summary judgment on the gross negligence claim raised in the second amended complaint.[10]

## II. Partial Grant of Motion for Attorney Fees

¶39    Neither party is satisfied with the district court's partial grant of Dullanty's request for attorney fees. Fleming challenges the court's award of attorney fees Dullanty incurred in securing dismissal of the earlier complaints. Conversely, on cross-appeal, Dullanty challenges the denial of his request for additional attorney fees incurred in obtaining summary judgment and dismissal of the second amended complaint. We address each challenge in turn.

### A.    Grant of Attorney Fees Related to the Earlier Complaints

¶40    Utah follows the American rule, which generally precludes a prevailing party's recovery of attorney fees in the absence of statutory or contractual authorization for such an award. *Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 47, 424 P.3d 897. But a "breach of a fiduciary obligation is a well-established exception

---

10. Although Fleming's argument is largely focused on gross negligence, he also, at least nominally, challenges the grant of summary judgment on the willful misconduct portion of his claim. "Willful misconduct goes beyond gross negligence in that a defendant must be aware that his conduct will probably result in injury." *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 335 (Utah 1985). It "incorporates the elements of knowledge of the dangerous condition and of the fact that serious injury is a probable result, and inaction in the face of such knowledge." *Rawcliffe v. Anciaux*, 2017 UT 72, ¶ 23, 416 P.3d 362 (quotation simplified). Because we affirm the grant of summary judgment on the gross negligence claim, it follows that summary judgment on the willful misconduct claim was also proper.

to the American rule."[11] *Id.* (quotation simplified). *See USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶¶ 93, 95 n.142, 372 P.3d 629; *Campbell v. State Farm Mutual Auto. Ins. Co.*, 2001 UT 89, ¶ 122, 65 P.3d 1134, *rev'd on other grounds*, 538 U.S. 408 (2003). This exception was the basis for the district court's award of attorney fees Dullanty incurred in securing dismissal of the earlier complaints.

¶41    Fleming contends that the court erred in concluding that the earlier complaints each "included a claim for breach of fiduciary duty," thereby allowing for an award of attorney fees. He asserts that this conclusion is unsupported either by the language of the earlier complaints or by the court's prior rulings. We agree on the latter point and accordingly reverse the attorney fees award.

¶42    After the case was reassigned from Judge Holmberg to Judge Mrazik, *see supra* note 5, and after dismissal of the second amended complaint, the district court awarded Dullanty attorney fees incurred up until the date of the January 2019 order. The court stated that it was only after that date that "the nature of Mr. Fleming's claims changed." Specifically, the court's written order

---

11. In *Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, 424 P.3d 897, the appellants argued that the fiduciary duty exception to the American rule was intended to apply only in "particularly egregious" cases rather than in all breach of fiduciary duty cases. *Id.* ¶ 48 (quotation simplified). Although our Supreme Court acknowledged that this was "an important question," it did not reach the merits of the issue because the appellee had failed to establish that a breach of fiduciary duty had occurred in the first place. *Id.* Fleming does not raise a similar argument in this case, focusing his efforts instead on assailing the district court's characterization of the earlier complaints as having pleaded breach of fiduciary duty claims.

stated that as "recognized" in the January 2019 order, the earlier complaints "explicitly pled a claim for breach of fiduciary duty" and that it was only in the second amended complaint that Fleming properly pleaded a gross negligence/willful misconduct claim. But the court's reliance on the January 2019 order, which was the sole basis for its decision, is misplaced.

¶43    Judge Holmberg entered the January 2019 order in response to Fleming's first motion to reconsider. The court had previously dismissed the first amended complaint on the ground that Fleming's "sole cause of action [was] based on allegations of tort liability" and the only duty the complaint identified was "a fiduciary duty." Based on this, the court had concluded that, "in reality," the first amended complaint raised "an action for breach of [Dullanty's] fiduciary duty to [the HOA], regardless of how it is labeled in the First Amended Complaint." And because the complaint did not allege "any injury or harm distinct from all other [HOA] members," the court dismissed the first amended complaint for lack of standing. In his subsequent motion to reconsider, Fleming asserted that the first amended complaint did not, in fact, raise a claim for breach of fiduciary duty but instead raised a claim for gross negligence or willful misconduct. He further argued that "merely noting the existence of" Dullanty's fiduciary duty to the HOA's members "does not assert a breach of fiduciary [duty] claim." The court found this argument persuasive, resulting in its entry of the January 2019 order vacating the dismissal of the first amended complaint and granting leave to amend.

¶44    The January 2019 order stated that although the first amended complaint "refer[red]" to Dullanty "owing a fiduciary duty," the court was "no longer convinced that [Fleming's] claim should be cast as a breach of fiduciary duty claim." The order noted that Fleming "has continuously maintained that he is bringing a gross negligence and/or willful misconduct claim," and the order indicated that "in carefully analyzing" the HOA's

governing declaration, "the Court can envision situations where a board member could face personal liability for such a claim." The order also noted that Dullanty had "acknowledged as much" in his memorandum. Accordingly, the order stated that "in construing [Fleming's] pleadings liberally, it appears that [his] consistent intent has been to advance a cause of action for willful misconduct and gross negligence, resulting in individual damages." Nevertheless, the order stated that Fleming "would still be required to allege each element of gross negligence/willful misconduct, including the existence and breach of a duty separate and apart from a fiduciary duty." The order next stated that the first amended complaint alleged "only breach of fiduciary duty." But because the motion to reconsider "allude[d] to various other duties that [Dullanty] allegedly breached," "in the interest of justice," Fleming was granted leave to amend the complaint "to allege each element of gross negligence/willful misconduct, including identifying a duty or duties owed by [Dullanty] which have allegedly been breached and which can be brought in his individual capacity as opposed to derivatively."

¶45   Later, in granting the attorney fees award, the court (Judge Mrazik) based its conclusion that Fleming pleaded a claim for breach of fiduciary duty in the earlier complaints on the single sentence in the January 2019 order that the first amended complaint alleged "only breach of fiduciary duty." As part of its oral ruling at the hearing on attorney fees, the court quoted this language and shortly thereafter stated that "[t]he fact remains, as recognized by Judge Holmberg in January of 2019, that Mr. Fleming had alleged in both" of the earlier complaints "a claim for breach of fiduciary duty." But the court's reliance on that single sentence was misplaced.

¶46   Contrary to the district court's later characterization, the January 2019 order reversed the prior dismissal of the first amended complaint because the court was "no longer convinced that [Fleming's] claim should be cast as a breach of fiduciary duty

claim." The court had been persuaded that Fleming's "consistent intent has been to advance a cause of action for willful misconduct and gross negligence, resulting in individual damages." Although the court later stated that the first amended complaint alleged "only breach of fiduciary duty," which at first glance appears to contradict the court's aforementioned conclusions, this apparent contradiction is readily resolved when the statement is viewed as part of the court's discussion of the breach-of-duty element of a gross negligence claim. There, the court was indicating that this particular element was lacking as the only breach of duty mentioned in the first amended complaint was that of fiduciary duty. But because the motion to reconsider "allude[d] to various other duties that [Dullanty] allegedly breached," the court (Judge Holmberg) vacated its prior dismissal of the first amended complaint and granted leave for Fleming to allege those other duties under the gross negligence theory. This interpretation is further supported by the fact that the statement that the first amended complaint alleged "only breach of fiduciary duty" did not specify that the complaint alleged a "claim" for breach of fiduciary duty—merely that it alleged a "duty."

¶47 The January 2019 order thus clearly held that the earlier complaints raised a claim for gross negligence or willful misconduct, albeit with some deficiencies—not that they "explicitly pled a claim for breach of fiduciary duty," as the court (Judge Mrazik) later stated. The court's attorney fees award was therefore based on an erroneous interpretation of the January 2019 order. To be sure, "while a case remains pending before the district court prior to any appeal," the court is "free to reconsider" an earlier decision, even one entered by a prior judge, either "sua sponte or at the suggestion of one of the parties." *McLaughlin v. Schenk*, 2013 UT 20, ¶ 22, 299 P.3d 1139 (quotation simplified). Indeed, the district court took this course of action more than once in this case. But that is not what happened in this instance. Rather

than reconsidering the January 2019 order, the court based its decision on a misinterpretation of the order.

¶48 Accordingly, we reverse the attorney fees award in Dullanty's favor.[12]

B. Denial of Attorney Fees Related to the Second Amended Complaint

¶49 On cross-appeal, Dullanty raises two challenges to the district court's denial of his request for attorney fees related to the second amended complaint. First, he argues that the court erred in ruling that he was not entitled to attorney fees under the bad faith statute. Second, he contends that the court also erred in ruling that he was not entitled to attorney fees under the RNCA. We affirm on both fronts.

1. The Bad Faith Statute

¶50 Utah Code section 78B-5-825(1), which is more commonly referred to as "the bad faith statute," directs that a district court "shall award reasonable attorney fees to a prevailing party" in a civil action "if the court determines that the action or defense to

---

12. Dullanty seeks an award of attorney fees incurred on appeal. He bases his request on two grounds: (1) as the prevailing party who was also awarded attorney fees below, *see Fadel v. Deseret First Credit Union*, 2017 UT App 165, ¶ 38, 405 P.3d 807 ("Generally, when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal.") (quotation simplified), *cert. denied*, 409 P.3d 1047 (Utah 2017), and (2) for having to defend against a frivolous appeal under rule 33 of the Utah Rules of Appellate Procedure. Because Fleming prevailed on this issue, resulting in reversal of the district court's attorney fees award, neither ground is availing, and Dullanty's request is denied.

the action was without merit and not brought or asserted in good faith." Notably, the bad faith statute "is narrowly drawn and not meant to be applied to all prevailing parties in all civil suits." *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 46, 86 P.3d 712 (quotation simplified). To that end, a prevailing party is entitled to attorney fees under the statute only if the district court determines both "that the losing party's claim was (1) without merit, and (2) not brought or asserted in good faith." *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, ¶ 76, 469 P.3d 1003 (quotation simplified).

¶51 The first element requires more than a mere "determination that a party lost on the merits." *McFarland v. McFarland*, 2024 UT App 31, ¶ 33, 547 P.3d 204. Rather, a claim "is without merit if it is frivolous, is of little weight or importance having no basis in law or fact, or clearly lacks a legal basis for recovery." *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 65, 507 P.3d 357 (quotation simplified). The second element "turns on a factual determination of a party's subjective intent." *Id.* (quotation simplified). That is, "a party acts in bad faith when he brings [a claim] and either (1) lacks an honest belief in the propriety of the activities in question, (2) intends to take unconscionable advantage of others, or (3) intends to or has knowledge of the fact that his actions will hinder, delay, or defraud others." *Id.* (quotation simplified). Both the "without merit and bad faith" determinations "must be made independently from one another," and "the presence of one element does not necessarily imply the presence of the other." *McFarland*, 2024 UT App 31, ¶ 34 (quotation simplified).

¶52 Dullanty has not carried his burden of persuasion on the "in bad faith" element because he has neither directly engaged with the district court's reasoning nor marshaled the evidence in support of the court's findings. "Appellants carry the burden to persuade a reviewing court through reasoned, supported argument that the district court committed harmful, reversible

error—a burden that necessarily requires the appellant to address the reasoning and basis of the district court's ruling and to explain why that court got it wrong." *Big Game Forever v. Peterson*, 2024 UT App 78, ¶ 19, 551 P.3d 411 (quotation simplified). *See* Utah R. App. P. 24(a)(8). An appellant who fails to "meaningfully engage with the district court's reasoning falls short of demonstrating any error on the part of the district court." *Big Game Forever*, 2024 UT App 78, ¶ 19 (quotation simplified). Moreover, "a party challenging a district court's factual findings on appeal bears a heavy burden of persuasion in demonstrating that the court's findings are clearly erroneous," and that party "will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal the evidence sufficient to overcome the healthy dose of deference owed to factual findings." *In re Estate of Wright*, 2024 UT App 146, ¶ 28, 559 P.3d 966 (quotation simplified).

¶53 Here, Dullanty does not engage with the district court's reasoning in finding that Fleming did not bring the second amended complaint in bad faith. Rather, his argument that the court's determination was clearly erroneous is entirely focused on listing evidence in support of his position that "[g]iven the fervor with which Fleming pursued his claims, and his obvious disdain for the Board—and Dullanty in particular—holding them 'responsible' for remodel missteps . . . , the real motive becomes clear: to punish and harass Dullanty." He additionally asserts that the court's bad faith finding is entitled to "little or no deference" because the "court merely recited the standard and did not discuss particular evidence." We disagree with this characterization of the court's decision.

¶54 In finding that the second amended complaint did not allege a gross negligence claim in bad faith, the court stated that it was "not persuaded that Mr. Fleming either lacked an honest belief in the propriety of the activities in question, intended to take unconscionable advantage of Mr. Dullanty or the [Board], or intended to, or had knowledge of the fact that his actions would

hinder, delay, or defraud others." The court further found that the parties held differing views of the evidence presented in this case. That is, while Dullanty viewed "the substantial production that he made as irrefutable evidence that he was acting reasonably," Fleming "look[ed] at the same evidence and focuse[d] on different items and different pieces of sworn testimony and [came] to a different conclusion." And while the gross negligence claim was ultimately unable to withstand summary judgment, the court found that Dullanty had not "made a persuasive or sufficient showing that" the gross negligence claim "was not brought or asserted in good faith." The court's analysis thus went beyond merely citing the standard. Rather, the court supported its finding that Fleming did not act in bad faith with subsidiary findings—none of which Dullanty has challenged on appeal.

¶55    Additionally, apart from noting Fleming's denial of acting in bad faith, Dullanty has not carried his burden to marshal the evidence in support of the court's bad faith finding or its subsidiary findings. Instead, Dullanty attempts to shift the marshaling burden onto the district court, citing *Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, 469 P.3d 1003, in support of his contention that the court's decision is entitled to "little or no deference" because it did not "discuss particular evidence." But in *Rocky Ford*, our Supreme Court reversed an attorney fees award under the bad faith statute on the ground that the district court's bad faith determination was unsupported by sufficiently detailed findings, *see id.* ¶¶ 79–81—not that the findings were clearly erroneous, which is the focus of our review in this case. The Court explained that although detailed findings "are not always strictly required," "a lack of detail in a lower court's findings will make it more difficult for [appellate courts] to afford deference" because a lack of detailed findings makes it difficult "to understand the discretion that was exercised by the court below." *Id.* ¶ 80. Despite Dullanty's assertion to the contrary, *Rocky Ford* does not require district courts to cite

evidence in support of their findings. And Dullanty has not challenged the adequacy of the court's bad-faith findings.

¶56 For these reasons, Dullanty has not carried his burden of persuasion on his challenge to the denial of his request for attorney fees under the bad faith statute.

2. The RNCA

¶57 Utah Code section 16-6a-612(5)(b) provides that "[o]n termination of a derivative proceeding the court may order . . . the plaintiff to pay a defendant's reasonable expenses, including attorney fees, incurred in defending the proceeding, if it finds that the proceeding was commenced or maintained: (i) without reasonable cause; or (ii) for an improper purpose." In denying Dullanty's request for attorney fees brought under this provision, the district court held that the second amended complaint did not raise a derivative action because it raised "a claim for individual damages peculiar to [Fleming] and suffered by him uniquely." *See supra* note 3.

¶58 Although Dullanty challenges the court's conclusion that Fleming did not bring a derivative action, we need not reach the merits of this argument because Dullanty has not satisfied the second requirement under the statute: that the action was brought "without reasonable cause" or "for an improper purpose." Dullanty argues that this element is satisfied "[f]or the same reasons that Fleming's claim was without merit and in bad faith." This argument therefore rises and falls with his argument on the bad faith statute. And because that argument proved unavailing, so necessarily does this argument.

CONCLUSION

¶59    As concerns the second amended complaint, the district court did not err in granting summary judgment on the gross negligence claim, nor did it err in denying Dullanty's request for attorney fees based on the bad faith statute or the RNCA. We therefore affirm those decisions. But because the court's attorney fees award related to the earlier complaints was based on a misreading of the January 2019 order, we reverse that award.

_____